## STATE EX REL. JULIUS ANSETH v. DISTRICT COURT OF KOOCHICHING COUNTY AND ANOTHER.[1]

July 7, 1916.

Nos. 19,920—(258).

**Workmen's Compensation Act — injury to bartender — award of lump sum.**

Plaintiff, a bartender in defendant's saloon in the city of International Falls, was struck in the eye by a drinking glass thrown by a drunken patron of the saloon. It is *held*:

(1) The evidence sustains the finding that the glass was not thrown in a personal altercation between plaintiff and the drunken man, but that the latter did not know the nature of his act or what he was doing.

(2) The accident was one arising out of plaintiff's employment as bartender in the saloon.

(3) Under section 25 of the Workmen's Compensation Act, as amended by Laws 1915, c. 209, the court has no authority to commute the periodical payments by awarding a lump sum judgment in lieu thereof, unless the parties agree.

(4) The trial court erred in awarding a sum in excess of $100 for medical services.

(5) It was not necessary for relator to ask the trial court to amend its decision in the respects mentioned, in order to raise the questions in this court.

[1] Reported in 158 N. W. 713.

Note.—As to when injury to workman arises out of his employment within meaning of workmen's compensation acts, see notes in L.R.A. 1916A, 232, 314, 317, 320, 331.

Upon the relation of Julius Anseth this court granted its writ of *certiorari* to review the action of the district court for Koochiching county, McClenahan, J., in proceedings under the Workmen's Compensation Act by John B. Tubbs, employee, against Julius Anseth, employer. Modified.

*Denegre & McDermott,* for relator.

*P. J. McPartlin,* for respondents.

BUNN, J.

Proceedings under the Workmen's Compensation Act to recover compensation for injuries received by John B. Tubbs, in the course of his employment by Julius Anseth, as bartender in a saloon in the city of International Falls, Koochiching county. The trial court awarded compensation in the sum of $1,000 to be paid in a lump sum, and $150 for medical services. The case comes to this court on a writ of *certiorari.*

The first question is whether the accident to Tubbs arose out of his employment. The findings of the trial court which are amply supported by the evidence, show the facts to be as follows: During the month of July, 1915, Tubbs was employed by Anseth as a bartender in the latter's saloon in International Falls. In the course of his employment, and while actually engaged in his duties as bartender in the saloon, he was struck in the right eye by a heavy drinking glass thrown by a patron of the saloon who was so drunk that he did not know the nature of his act or what he was doing. It was a contention of relator on the trial that the glass was thrown by Dubonis, the drunken man, in a personal altercation between him and the bartender, but the finding is against this view, and the evidence is such that we must accept as true the version of the matter adopted by the trial court.

Did this accident "arise out of" Tubbs' employment as bartender? Did this employment necessarily accentuate the natural hazard from assault to which all men are subject? In other words, did his employment cause a special degree of exposure to the risk? We have no hesitation in answering these questions in the affirmative. The court will take judicial notice that the position of bartender, patron or spectator, in a saloon, especially in one situated where rough characters are apt to congregate and carouse, is quite apt to be one of peculiar danger. Bar-room assaults are

not of infrequent occurrence. We had an illustration of one very recently in the case of Lynch v. Brennan, 131 Minn. 136, 154 N. W. 795, and illustrations might be multiplied indefinitely by reference to other decided cases.

We will not review the decisions in England and in this country, rapidly increasing in number, in which the subject of whether the particular accident is one "arising out of" the employment is discussed. Reference may be made to State v. District Court of Ramsey County, 129 Minn. 502, 153 N. W. 119, to the elaborate note in L.R.A. 1916A, p. 23, and to Chartres, Judicial Interpretation of Workmen's Compensation Law. We hold that the accident in the case at bar was one arising out of the employment. As to the point that the findings are not of facts from which it may reasonably be inferred that the accident arose out of the employment, we hold it not well taken. It was not necessary for the court to find specifically that the accident arose out of the employment.

Questions more difficult arise from the court's award of compensation in a lump sum, rather than in weekly payments. The injury resulted in the total loss of the right eye, and therefore entitled plaintiff to compensation of "fifty per centum of daily wages during one hundred weeks." Laws 1915, p. 288, c. 209, § 13 (c). Plaintiff's wages were $20 per week, and he was therefore entitled to $10 per week for one hundred weeks. Instead of making this award, the court without the consent of the parties, gave compensation in the sum of $1,000 and judgment was entered against relator for that sum, with $150 for medical services and costs.

Two questions arise: (1) Had the trial court the right, without the agreement of the parties, to award a lump sum judgment instead of periodical payments? (2) If so, should the weekly payments have been commuted by taking the present value thereof calculated on a six per cent basis?

Section 25 of the act, as amended by Laws 1915, p. 296, c. 209, reads as follows:

Sec. 25. PAYMENT IN LUMP SUM. The amounts of compensation payable periodically hereunder, either by agreement of the parties, so approved by the court, or by decision of the court, may be commuted to one or more lump sum payments, except compensation due for death or permanent total disability, or for permanent partial disability resulting

from total loss of hearing or from the loss of an arm or a hand or a foot or a leg or an eye, or of more than one such member. These may be commuted only with the consent of the district court."

"In making such commutations the lump sum payments shall, in the aggregate, amount to a sum equal to the present value of all future instalments of compensation calculated on a six per cent basis."

The first paragraph of this section is not fortunately worded, but we construe it as providing that the periodical compensation, whether agreed on by the parties and approved by the court as provided in section 23, or fixed, where there is a failure to agree, by the decision of the court, may be commuted to one or more lump sum payments, except that compensation due for death, permanent total disability, or permanent partial disability, resulting from specified conditions, one of which is the loss of an eye, in which cases the periodical payments may be commuted only with the "consent of the district court." The only construction that will give force to all the language used is that, in the excepted cases, the agreement of the parties to commute the periodical payments is ineffective, unless the consent of the court is obtained, while in the other cases such consent is not necessary. It does not seem a reasonable construction of the section to hold that the court may, in the absence of the agreement of the parties, against the will of either one, commute the weekly payments to a lump sum payment. The statute makes the *consent* of the court necessary, and this implies that there must be something to consent to, and we think that. something is the agreement of the parties. This is the view taken by the Nebraska court in Pierce v. Boyer-Van Kuran L. & C. Co. 99 Neb. 321, 156 N. W. 511, and adhered to in Johnansen v. Union Stockyards Co. 99 Neb. 328, 156 N. W. 511.

Our interpretation of the meaning of section 25 is the same as that given to a like section in the Nebraska act in Bailey v. United States Fidelity & Guaranty Co. 99 Neb. 109, 155 N. W. 237. Under statutes differently worded other courts have held that the commutation of periodical payments is discretionary with the court. L.R.A. 1916A, 262, and cases cited. The specific provisions of the statutes of the different states in regard to the commutation of periodical payments are noted in 1 Bradbury, Workman's Compensation, p. 951, as are the decided cases interpreting these provisions. We find no statute like ours except in Neb-

raska, and it seems to us that the court of that state has correctly construed the statute. The whole idea of periodical payments is to give the workman an income payable as his wages were paid. In cases of injuries that are not serious, commutation to a lump sum is left to the agreement of the parties. In cases of more serious injury, the agreement is ineffectual unless the court gives its consent, finding a lump sum payment to be for the best interest of the workman. But in no case can the court commute the payments unless the parties agree. All the authorities agree that the discretion, where it exists, to award a lump sum judgment, should be sparingly exercised. In most cases it is much better for the workman and his family that the compensation be paid in instalments corresponding to the payment of his wages. This is the plan of the act, and it is only in exceptional cases that the court should approve a commutation.

It should be noted that in making such commutations, the present value of the future instalments of compensation, calculated on a six per cent basis, should be taken. That was not done in this case. In view of our conclusion that the court should not have commuted the weekly payments, we need not say what their present worth would amount to.

We also think that the trial court awarded $50 too much for medical services. Section 18 of the act limits the liability for such services, treatment, supplies, etc., required at the time of the injury and thereafter for 90 days, to the sum of $100, except that the court may, upon the necessity being shown at any time within 100 days after the injury, require the employer to furnish additional medical treatment and supplies during the 90-day period, the total liability not exceeding $200. This section clearly contemplates an application to the court for additional medical services or supplies, and action thereon. There was no application or order of this kind in the case at bar, and we think the court had no authority to make an allowance in excess of $100.

Respondent makes the point that, as relator did not ask the trial court to amend or modify its decision in respect to the matters of the lump sum award and the allowance for medical services, it cannot raise the questions in this court. We do not hold this view. The act does not contemplate applications to the trial court for amendments to its findings or conclusions or for a new trial. We do not decide that the trial court may not

be asked to amend its decision, but hold that it is not necessary.   The assignments of error are clearly sufficient to present the questions.

The judgment of the court below is modified so that it shall provide for weekly payments of $10 per week for 100 weeks, instead of the payment of $1,000 in a lump sum, and so that it shall direct the payment of $100, instead of $150, for medical services.   No statutory costs in this court.