# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF MINNESOTA

## MARY HINCHUK, FORMERLY MARY BUSH
### v. SWIFT & COMPANY.[1]

April 22, 1921.

No. 22,304.

**Workmen's Compensation Act — injury inflicted in quarrel over work.**

1. An employe injured during the course of his employment, though by the wilful act of a coemploye, is within the compensation act, if there is some causal relation between the employment and the injury, that is, if the injury be one which may be seen to have had its origin in the nature of the employment. An injury inflicted by a coemploye as a result of a quarrel over the manner of doing their work is within the rule.

**Same — wife conclusively presumed dependent on her husband.**

2. Under our statute a wife is conclusively presumed to be wholly dependent upon her husband, unless voluntarily living apart from him. The trial court found that plaintiff was so dependent. Applying the rule stated in State v. District Court, 142 Minn. 335, it is *held* that the finding is sustained.

Upon the relation of Swift & Company, the supreme court granted its writ of certiorari directed to the district court for Ramsey county and the Honorable Hugo O. Hanft, one of the judges thereof, to review the judgment in that court in proceedings brought under the Workmen's

[1]Reported in 182 N. W. 622.
149 M.—1.

Compensation Act by Mary Hinchuk, widow of Alex Bush, employe, against relator employer. Affirmed.

*Barrows, Stewart & Metcalf,* for relator.

*Drill & Drill,* for respondent.

HALLAM, J.

1. This case arises under the Workmen's Compensation Act. Alex Bush was in the employ of defendant at its packing plant at South Saint Paul. He and a workman named Harper were engaged in trucking meat to a washing machine. When the truck reached the machine it was unloaded piece by piece. Two men worked together on a truck. One would pull and the other would push and the fair way was to take turns. Bush and Harper quarreled over the moving of the truck, each claimed he was being compelled to do more than his share. The testimony is somewhat in conflict, but one witness testified that they quarreled over who should push and who should pull the truck. Finally Bush took the handles and pulled and Harper pushed. When they reached the washing machine they quarreled some more, each calling the other names. When they finished the argument Bush started to work unloading meat, but Harper walked 12 or 15 steps away, picked up a piece of iron pipe that lay there and struck Bush over the head and caused his death. The trial court allowed compensation under the statute.

The statute is that compensation shall be paid by the employer "in every case of personal injury or death of his employee, caused by accident, arising out of and in the course of employment." G. S. 1913, § 8203. The word accident is defined to mean "an unexpected or unforeseen event, happening suddenly and violently, with or without human fault and producing at the time, injury to the physical structure of the body." G. S. 1913, § 8230(h). The act is declared not to "include an injury, caused by the act of a third person or fellow employe * * * because of reasons personal to him, and not directed against him as an employe, or because of his employment." G. S. 1913, § 8230(i).

Section 8230(h) gives us no trouble. Section 8203 and section 8230(i) taken together may clearly include an injury inflicted by the wilful act of another. See State v. District Court of Koochiching County,

134 Minn. 16, 158 N. W. 713, L.R.A. 1916F, 957; State v. District Court, Hennepin County, 140 Minn. 75, 167 N. W. 283, L.R.A. 1918E, 502. This is the prevailing construction of similar statutes as applied to cases similar to this.

In Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530; two employes, in culling barrel staves, became involved in a dispute because one took staves from the rack of the other. One injured the other. Compensation was allowed.

In Swift & Co. v. Industrial Commission, 287 Ill. 564, 122 N. E. 796, an employe whose duty it was to repair leaks in steam pipes in a large packing plant was injured in a fight with the foreman of a department to which he had been summoned, the altercation growing out of matters connected with the injured employe's work. The statute was held to apply.

In Matter of Heitz v. Ruppert, 218 N. Y. 148, 112 N. E. 750, L.R.A. 1917A, 344, claimant, employed as a driver by a brewing company, took exception to the manner in which a fellow workman washed off the horses. A quarrel ensued, and, in physical encounter that grew out of it, claimant was injured. Held, entitled to compensation.

In Polar Ice & Fuel Co. v. Mulray, (Ind. App.) 119 N. E. 149, an employe of an ice company, employed to check and collect for shortage of drivers, was shot and killed by a driver as a result of a quarrel over collections. Compensation was allowed.

In Western Indemnity Co. v. Pillsbury, 170 Cal. 686, 151 Pac. 398, a worker on a railroad section was told by the foreman to drop his shovel and get his time, but the man refused and the foreman undertook to take his shovel from him and was injured. Compensation was allowed.

In M'Intyre v. A. Rodger & Co. 41 Scot. Law Reporter, 107, two workmen engaged in a tussle over the possession of a brush to be used in the work and one was injured. The statute was held to apply.

The principle applicable to such cases is that the injury is included within the statute, if there is some causal relation between the employment and the injury. Not that the injury must be one which ought to have been foreseen, but it must be one which, after the event, may be seen to have had its origin in the nature of the employment.

This is such a case. Bush and Harper became involved in a quarrel over the manner of doing the work in which they were jointly engaged. There was no personal antipathy. Differences over the work caused the whole trouble. The trial court evidently took the view that there was no real cessation of hostilities from the time trouble started until it was over. We think the evidence sustains this position and that the court properly held the case to be within the statute.

2. Defendant contends that plaintiff was not a dependent and not entitled to compensation under the statute. As the wife of deceased she is conclusively presumed to be wholly dependent upon him, unless she was "voluntarily living apart" from him at the time of his death. G. S. 1913, § 8208, as amended by Laws 1915, p. 285, c. 209. See State v. District Court of Ramsey County, 137 Minn. 283, 163 N. W. 509; State v. District Court of Hennepin County, 139 Minn. 409, 166 N. W. 772. Defendant pleaded and undertook to prove that plaintiff was voluntarily living apart from her husband. The court found that plaintiff was the sole dependent of deceased. This necessarily negatived defendant's contention. Defendant contends that this finding is not sustained by the evidence. Deceased was injured on January 2, 1918, and died January 5. Shortly before this plaintiff left the family home and went to Milwaukee. She testified through an interpreter. When asked: "How long have you been in Milwaukee?" she answered: "Four weeks." The question referred to the time before her husband died. Perhaps she so understood it. Another witness, however, testified that plaintiff went to Milwaukee after Christmas and returned January 20, a period of about four weeks all told. On May 29, 1918, plaintiff married John Hinchuk. She bore a child September 24, 1918. The court refused to find that the child was the child of deceased so as to be entitled to compensation.

Defendant claims that the facts are conclusive that she was voluntarily living apart from her husband. There is evidence from which the court might have found that she was. Plaintiff and her husband had gotten along badly together. She had left him many times before, but had always come back. Hinchuk had been the occasion of some trouble between them. There is evidence of an admission on her part that she met him while she was in Milwaukee. The birth of her child on Sep-

tember 24 and her marriage to Hinchuk in May are both circumstances sustaining the theory of abandonment of her husband before his death. On the other hand, she testified positively that there had been no separation; that she went to Milwaukee to visit a cousin; that her husband knew of her going and consented and gave her money to pay her way and was providing her with her means of living, and that she had never had illicit relations with Hinchuk.

We are of the opinion that the evidence is not conclusive that plaintiff was voluntarily living apart from her husband at the time of his death. This court on appeal in compensation cases does not weigh the evidence and declare the preponderance thereof. If the evidence is such that reasonable minds may reach different conclusions, the question becomes one of fact and the finding must be sustained. State v. District Court of Ramsey County, 142 Minn. 335, 172 N. W. 133. There is evidence sufficient to sustain the finding of the trial court.

Affirmed.