## HAROLD SIEGER v. KNOX & PETERSON.
## AETNA LIFE INSURANCE COMPANY, INSURER.[1]

July 18, 1924.

No. 24,021.

**Workman entitled to compensation for unprovoked assault by former employe.**

1. Relator was assaulted while at work in his employer's garage by a drunken former employe. They were entire strangers to each other. The evidence discloses no provocation for the assault except as it began with the drunken man's criticism of relator's work. The assault was wholly unprovoked by relator. *Held* that relator is entitled to compensation under the Workmen's Compensation Act.

**"Reasons" for assault include provocation.**

2. The statute, subdivision (j), § 66, c. 82, Laws 1921, as amended by section 14, c. 300, Laws 1923, denies compensation for injuries intentionally inflicted upon an employe by another "because of reasons personal to him and not directed against him as an employe, or because of his employment." The word "reasons" as there used refers to the provocation for the assault, and if the proper work of the employe furnishes the sole provocation for the assault, it is to be considered as directed against him because of his employment.

Upon the relation of Harold Sieger the supreme court granted its writ of certiorari directed to the Industrial Commission to review its decision denying compensation to relator in a proceeding brought under the Workmen's Compensation Act by relator employe, against Knox & Peterson, employer. Reversed with directions.

*Leslie S. High*, for relator.

*John J. Fee*, for respondent.

STONE, J.

Certiorari to review a decision of the Industrial Commission denying compensation.

[1]Reported in 199 N. W. 573.

Relator, while employed as a mechanic in the garage of Knox & Peterson was wantonly attacked and injured by one Kari. Compensation is sought by this proceeding. There is no evidence contradictory of relator's story of the assault. It runs thus:

"We went out for dinner and when I came back from lunch, about one o'clock, why there was a fellow around there drunk, * * * John Kari, by name, and he was bothering me with my work, telling me *how I should do it*, etc., but I did not pay much attention to him and he grabbed me by the arms after a while and I pushed him away, and then he let me alone for a long time and he went up to the front end of the garage and was fooling around with the girl in the office, and he was swinging a crowbar around the girl's head in the office and he came out in the shop still carrying the crowbar, and threatened to hit one of the other mechanics there and one other fellow that was there in the shop, threatened to hit him, and finally he threw the crowbar to the back end of the shop and then went about his business and I kept working, and then later he came over and started to talk to me and I was grinding valves at the time; I did not pay much attention to him 'till he called me a name * * * and I let it go for the simple reason he was drunk, and I went into the office to get a valve refacer, and he followed me in there *and he said something about why I wasn't working instead of walking around so much, running around the garage or something of the sort* and I says, well, I says, *if you were doing half as much as I was doing* instead of talking so much, you would be doing something, and he got sore and he come out; I got the valve refacer and I came out of the office to go back to my work and he says, what did you say that thing in front of the girl for; well, I says, for no reason at all simply because *I didn't want you butting in my business at all*, and he says, I have a damn good notion to hit you in the head with this hacksaw; he was carrying a hacksaw in his hand, but I did not think he would really do what he said he would, I did not think he would be foolish enough to do that, and so I did not pay any more attention to him and I left my work to go over to the bench and get an oil can, and while I was coming back, why I passed him and * * * he hit me in the back of

the head with the saw, and I turned around to see what was the matter and as I turned around he hit me in the eye with the saw."

The italics are ours and used for emphasis, the pertinence of which will speedily appear. It is clear that relator and Kari were strangers to each other, so there could have been no quarrel between them outside of the occurrences narrated by relator.

The testimony was heard by a referee who made findings for relator. He found expressly: "That such assault was directed against the petitioner by reason of his employment with the aforesaid Knox and Peterson, and not by reason of anything personal to himself."

From the referee's award, employer and insurer appealed to the Industrial Commission for a hearing de novo. Upon that hearing no additional evidence was taken. It was heard on the record made before the referee. As a result, the fourth finding of the referee, above quoted, was vacated and there was substituted for it this:

"That said John Kari was not at the time of said assault in the employment of said employer, and that he had no connection with or relation to the work being performed by said employe at the time of said injury and that said John Kari had no work being done by said employer or his said employes at the time of said assault, and that the act of assault which caused the injury and disability to the employe herein was not directed against said employe as an employe or because of his employment but was done and intended to injure said employe because of reasons personal to said John Kari."

Appended to the decision of the Industrial Commission is an opinion by Honorable F. A. Duxbury, Commissioner, which, after stating the facts, proceeds in part as follows:

"As has already been pointed out, there was nothing in the evidence to indicate that claimant was assaulted because he was an employe or on account of his employment. * * * The assault seemed to have been brought about by the intoxicated condition of Kari, causing him to be ugly and quarrelsome, the immediate

provocation being the personal offense which Kari felt at the remarks which the claimant made before the office girl. While this remark, as it appears in the evidence, would have probably been wholly insufficient to have caused any offense to a sober man, yet it seems to be the only reason shown for the assault. This offense was personal to the assailant, * * * and not as an employe or because of his employment."

The case gives us grave embarrassment because, after deliberate consideration, a majority of the court is of the opinion that the finding that the assault upon the relator was not directed against him as an employe or because of his employment is unwarranted by the evidence. That is a question, the duty of resolving which is imposed upon us by statute. (Section 2, c. 423, p. 652, Laws 1921.) Whether such a finding is supported by any evidence seems like a question of fact, but in reality is a question of law. Belanger v. Masonic Temple Assn. 153 Minn. 281, 190 N. W. 184. The question is not whether the evidence preponderates one way or the other, but whether there is any evidence to support the decision under review.

The function imposed upon us by statute is anything but agreeable. It is particularly the contrary here because of the very diligent and conscientious consideration given by the Industrial Commission not only to this case but to all others submitted to it. But the attendant embarrassment does not permit us to escape compliance with the mandate of the legislature.

Compensation cannot be awarded relator unless his injury arose "out of and in the course of his employment," and not even then, if it was caused by a third person, even a fellow employe, with the intention to injure relator "because of reasons personal to him and not directed against him as an employe, or because of his employment." Subdivision (j), § 66, c. 82, p. 126, Laws 1921, as amended by section 14, c. 300, p. 409, Laws 1923.

"Reasons" for an assault, as the word is here used, does not refer alone to a reason or cause amounting to a justification or compulsion of what followed. It may include such causes, but it is particularly

the unjustified assault, arising out of employment, for which compensation is intended. It must be therefore that the statutory reference to "reasons" for an assault includes the provocation, whatever it may have been and however slight. In this connection, the paradox is not to be overlooked that many an assault and battery is referred to as unprovoked, although it arises from a very tangible cause. It is considered unprovoked because of the inadequacy rather than the absence of provocation.

The precise question here presented is this: Given injury to an employe from wanton assault, perpetrated by a former employe who is a stranger to the one assaulted, while the injured employe is engaged in the proper work of his employment, the only provocation being furnished by that employment, is not the injured employe entitled to compensation as a matter of law? We think he is.

Under the statute, compensation cannot be denied because alone of the fact that the "reasons" (i. e. provocation) are "personal" to the injured employe. It must be also that such "reasons" are "not directed against him as an employe or because of his employment."

In this case, the "reasons" for the assault, the provocation, are found in the work relator was then doing for these employers. The trouble began when Kari first criticized relator and took him to task for "walking around" so much, the implication being that relator was loafing. The quarrel continued with nothing as a subject matter, cause or provocation, save relator's work and the young lady, a fellow employe, until it culminated in Kari's vicious attack with the hacksaw, one of the tools of the employment.

In such a situation, the employment is much more than the mere occasion for the assault. It is the provocation or reason for the row. It is the provoking cause. Under the statute, the connection between employment and injury is causal, directly so. Therefore, as a matter of law, we hold that the injury is of the kind the legislature intended to include by its phrase, "directed against him as an employe or because of his employment." The disjunctive "or" is significant. It is sufficient if the assault is directed against its victim "*because* of his employment." As was said by Mr. Justice Dibell in State ex rel. Common School District No. 1 v. District

Court, 140 Minn. 470 (474), 168 N. W. 555, 15 A. L. R. 579: "It is not a question of fault nor negligence. It is a question of causal relation between the employment and the injury for which compensation is sought."

Viewing the statute as we do and applying it to the undisputed facts, a majority of the court finds no escape from concluding that Kari's assault upon relator was directed against him as an employe and because of his employment.

It is significant but not controlling that the drunken Kari had been on the employer's premises all too long. He should have been removed long before. It was not the relator's duty to police the employer's premises. He was injured by the failure to protect their employes, at work, from the invasion of Kari. So, in one sense, relator was injured as the result of nonperformance of a duty resting on the employers.

In view of the special circumstances of this case, particularly the absence of any prior difficulty and everything but the employment as a provocation, the attack on relator would seem to arise out of and in the course of his employment as clearly as did the one involved in State ex rel. Anseth v. District Court, 134 Minn. 16, 158 N. W. 713, L. R. A. 1916F, 957. Relator was not injured as the result of any counter attack or mission of chastisement. Compare Swaney v. Crawley, 133 Minn. 57, 157 N. W. 910. Clearly the assault was not "unconnected with the employment." Although personal to the participants, the employment was more than the mere occasion for the quarrel. It was, within the meaning of the statute, the cause, provocation and reason for it.

Many of the related cases are cited in State ex rel. Common School District No. 1 v. District Court, supra. There is no occasion for further consideration of them here. It would be difficult to harmonize all of them. No argument has been advanced which would enable us to make any different application of the statute to the undisputed evidence.

Order reversed and case remanded for the allowance of compensation in an amount to be determined by the Industrial Commission.