## CORA J. HANSON v. ROBITSHEK-SCHNEIDER COMPANY AND ANOTHER.[1]

March 21, 1941.

No. 32,517.

*G. P. Mahoney* and *J. S. Morrison,* for relator.

*C. E. Warner,* for respondents.

STONE, JUSTICE.

*Certiorari* to industrial commission to review an order denying compensation for death. The decedent was a factory superintendent and traveling salesman in the employ of Robitshek-Schneider

[1]Reported in 297 N. W. 19.

Company. He did much journeying in his own automobile and carried samples of the woolen clothing and sports wear manufactured by his employer. On the evening of January 18, 1939, Hanson, with a fellow employe and one of his employers, worked overtime and on into the evening marking and tagging samples. Those to be used by Hanson were placed in his sample cases and left in the office. Then, after dark, at about 8:30, Hanson went for his automobile, which was in a garage a few blocks distant. His plan was to return for his samples preparatory to going on a sales journey into Iowa the next morning.

While proceeding down the west sidewalk on First avenue north in Minneapolis and at the alley between Third and Fourth streets, he was assaulted by two young men unknown to him. Shortly thereafter, he staggered into the garage with wounds from which he had already bled profusely and which proved fatal within a few months. That his death was due to the assault is not questioned.

Hanson was 54 years of age and an abstainer from intoxicants. He was without "an enemy in the world" to the knowledge of his long-time intimates. The record is barren of even suggestion that his life and its activities had been such as give any man or group of men occasion or motive for assaulting him. As motive for the assault, reasonable inference excludes everything but robbery.

On the evening of the injury it was necessary for the deceased, in the course of his employment, to work at the plant of his employers. That plant is located in the wholesale district of Minneapolis. Endeavoring to show that the risk of assault was concomitant with employment in that district after dark, relator introduced evidence with respect to criminal activity therein. Reliance is placed upon data taken from a sociological study known as "Social Saga of Two Cities" (published by the Minneapolis Council of Social Agencies). The area surrounding the plant is designated therein as Census Tract No. 45. During the period studied (three years or more prior to July, 1936, varying with types of crime studied), it was found that this area ranked first

in the city in number of automobile thefts, first in larceny from person, second in larceny from places of business, and "has a very high instance of both homicide and robbery, as well as certain other major crimes."

Rebuttal of that evidence is sought by respondents in the fact that Census Tract No. 45, of which the territory immediately surrounding the plant is but a small part, contains a large area of the loop district, with diversity in nature and degree of business activity. Taking judicial notice of the specific area in question and of the diversity referred to, we think it beyond question that the survey taken over the larger area is relevant in inquiry with respect to conditions in the smaller.

■ We hold that the injury arose "out of" deceased's employment. 3 Mason Minn. St. 1940 Supp. § 4272-1. To us, that appears the only reasonable inference from the unquestioned evidence. Hanson's nightwork required activity in this district where crime was prevalent and, upon this occasion, at an hour tending to subject him to foul play. Attendant thereon was exposure to risks of injury by felony such as that which proved fatal for Hanson. His employment exposed him to a different and greater hazard of injury from assault than if he had been pursuing ordinary personal affairs. Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4; State ex rel. Anseth v. District Court, 134 Minn. 16, 158 N. W. 713; see Auman v. Breckenridge Tel. Co. 188 Minn. 256, 246 N. W. 889. His employment furnished opportunity for assault which would not have been present otherwise.

It is significant that in defining compensable accident the workmen's compensation law makes no mention of cause or causation as such. Impliedly, it thereby rejects or at least modifies the standard of proximate causation determinative in tort litigation. Therefore, care must be exercised lest long judicial habit in tort cases allows judicial thought in compensation cases to be too much influenced by a discarded or modified factor of decision.

It is apparent that the new standard "arising out of and in the course of" employment does not require that the latter be the

proximate cause of injury. If the legislature had meant that it would have said so. The words "in the course of" impose a requirement in respect to time and place. The phrase "out of" expresses a factor of source or contribution rather than cause in the sense of being proximate or direct.

Because of the intervening wrongful act of third parties or some such extrinsic contribution, the employment may not be the proximate cause. But it may be nonetheless so much source of the event that the latter in a very real and decisive sense arises out of the employment, much as a plant arises from the soil although growth would have been impossible but for the seed. So it is enough that injury follows "as a natural incident of the work * * * as a result of the exposure occasioned by the nature of the employment." Novack v. Montgomery Ward & Co. 158 Minn. 495, 498, 198 N. W. 290, 292. If the employment creates a special hazard from which injury comes, then, within the meaning of the statute, there is that "causal relation" between employment and result which many decisions (*e. g.,* State ex rel. Common School Dist. v. District Court, 140 Minn. 470, 168 N. W. 555, 15 A. L. R. 579) hold essential under the requirement that the injury arise "out of" the employment. Byhardt v. Ballord, 209 Minn. 391, 296 N. W. 504.

■ We next consider whether the death, having been caused by injuries inflicted intentionally, is not compensable by reason of 1 Mason Minn. St. 1927, § 4326(j), where the words "personal injuries arising out of and in the course of employment" are declared not to include—

"an injury caused by the act of a third person or fellow employe intended to injure the employe because of reasons personal to him, and not directed against him as an employe, or because of his employment."

That the injury is intentionally inflicted does not *ipso facto* preclude compensation. State ex rel. Common School Dist. v. District Court, 140 Minn. 470, 168 N. W. 555, 15 A. L. R. 579.

Compensation cases arising from assault fall mostly into three groups. Noncompensable are cases where the assailant was motivated by personal animosity toward his victim, arising from circumstances wholly unconnected with the employment. Lehman v. B. F. Nelson Mfg. Co. 193 Minn. 462, 258 N. W. 821; In re Wooley v. Minneapolis Equipment Co. 157 Minn. 428, 196 N. W. 477.

In contrast and compensable are injuries resulting from assault where provocation or motivation arises solely out of the activity of the victim as an employe. Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678; Davis v. S. S. Kresge & Co. 169 Minn. 245, 210 N. W. 1003; Sieger v. Knox & Peterson, 160 Minn. 185, 199 N. W. 573; Hinchuk v. Swift & Co. 149 Minn. 1, 182 N. W. 622.

In a middle ground are cases, of which this is one, where the assault was directed against the victim, neither "as an employe" nor for "reasons personal to him." Injuries so arising are ordinarily compensable. State ex rel. Anseth v. District Court, 134 Minn. 16, 158 N. W. 713.

A noncompensable assault must have been for "reasons personal" to the victim. Also, it must not have been "directed against him as an employe *or* because of his employment."

Here there is no suggestion of reasons personal to Hanson. The motive for robbery is neither the person nor personality of the victim. Rather and only it is his purse. American Mut. Liability Ins. Co. v. Herring, 43 Ga. App. 249, 158 S. E. 448. Similar in many of its facts is Sivald v. Ford Motor Co. 188 Minn. 463, 247 N. W. 687, but in one controlling feature it is plainly distinguishable. There was such evidence of reasons personal to the employe that, in our opinion, the evidence left it to conjecture rather than inference to decide whether his death arose out of his employment. On that narrow ground, we reversed an award of compensation.

And that presents the difficulty in this case. If the record reasonably supports an inference justifying a denial of compensation, or if conclusion must rest on conjecture, we should affirm the commission's order. But the only inference which appears to us to have support in the record is that the assault on Hanson occurred

"because of his employment" within the meaning of the statute.

Relator showed the probable absence of "reasons personal" to the victim. The burden of proof was on her and did not shift; but, with the record as it is, we think that the need of going forward with evidence to show reasons personal to the employe did shift to the employer and insurer. On that issue, relator made a *prima facie* case which should prevail with no evidence against it.

In Pennsylvania the statute requires compensation for all injuries sustained in the course of the employment although not arising therefrom. The rule there is that the burden rests on the employer "to show an intention to injure deceased, owing to reasons personal to him and not because of his employment." O'Rourke v. O'Rourke, 278 Pa. 52, 55, 122 A. 172, 173. We prefer to adhere to our long-established rule that the burden remains with the petitioner for compensation. But where, as here, petitioner has made a *prima facie* case, it cannot be presumed that an assault on an employe in the course of his employment was for reasons personal to him. It is but an application of familiar principles to hold that a *prima facie* case shifts to the opponent the burden of producing evidence to overcome it. Ryan v. Metropolitan L. Ins. Co. 206 Minn. 562, 289 N. W. 557; Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3470.

Our decision seems well supported by the reason of the matter and the weight of authority. Its thesis is largely that of the so-called "street risk" and "night watchman" cases. They and numerous assault cases arising under compensation laws are reviewed in the case note "Compensability of injuries resulting from assaults on employees by strangers to employment." 6 N.C.C.A.(N.S.) 670.

We are disposing of the matter favorably to relator as matter of law. In passing, we may be permitted the observation that it is impossible for us to see upon what theory compensation can be denied in this case and allowed in Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4. Because,

on this record, reasonable inference from credible, uncontradicted evidence permits no other result, the order will be reversed with direction for an award consistent with the views herein expressed. Relator is allowed an attorney's fee of $100.

So ordered.