## DONALD GOODLAND v. L. S. DONALDSON COMPANY AND ANOTHER.[1]

February 18, 1949.

No. 34,781.

*Hall, Smith, Enkel & Hedlund,* for relator.
*Reynolds & McLeod,* for respondents.

MAGNEY, JUSTICE.

Certiorari to the industrial commission to review an order denying compensation for injuries.

---

[1]Reported in 36 N. W. (2d) 4.

Relator, Donald Goodland, was employed by respondent Donaldson company as a package delivery truck driver. On August 5, 1947, he was in the vicinity of Fifty-sixth street and Twenty-eighth avenue south in Minneapolis at the end of a streetcar line. A streetcar was about to make a wye turn, and Goodland's truck was close to it. He describes the situation as follows:

"The streetcar motorman jerked the streetcar and nearly hit me; it was very close.

\* \* \* \* \*

"\* \* \* I hollered then, I said: 'What the hell are you trying to do?'"

The motorman came out of the streetcar and walked over to Goodland's truck, and, in Goodland's words, "put his hands up like he wanted to fight with me, like that (indicating)." The motorman then said: "Come on out," and Goodland replied: "No, don't be silly, I value my job, you ought to yours." Goodland then told the motorman that he should be reported for his actions, whereupon the motorman exhibited the number on his cap and said: "Go ahead and report." According to Goodland, nothing more was said between the two. The motorman returned to his streetcar, boarded it, and proceeded on his way. The first incident had terminated. The motorman was not called as a witness. After the streetcar had departed, Goodland walked across the street to two men who were waiting on the corner. The streetcar had been standing between them and Goodland's truck, so they had seen nothing of the incident. Goodland asked them if they had seen "the way this motorman acted" and if they "would be witnesses to his actions." They replied that they were motormen themselves and did not want to be witnesses. They said: "It is a hot day and the motorman most likely overheated," and suggested that Goodland overlook it. Goodland replied: "Well, the way they treat some of the customers on the streetcar and pedestrians and other people in the cars it is just awful." The men then said: "A lot of them has to be treated that way." Immediately after Goodland had returned to the truck one

of the two men on the corner came over. After telling Goodland that if he were not out of there in a minute he would pull him out of the truck, he pulled Goodland out of the truck and mauled him until stopped by two men who came up. Goodland claims compensation for the injuries he received. The referee found that Goodland sustained an accidental injury to his person which arose out of and in the course of his employment. On appeal, the industrial commission found that the injury did not arise out of his employment and denied compensation. We are asked to review this finding.

M. S. A. 176.01, subd. 11, reads in part:

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment,' it is hereby declared:

"* * * shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment."

In its opinion the industrial commission stated that Goodland's injuries were received "in the course of" his employment, but the controversial issue is whether such injuries arose "out of [the] employment." Some connection must be found between the employment and the accident so that the latter may with some reason be said to arise out of the former. Auman v. Breckenridge Tel. Co. 188 Minn. 256, 246 N. W. 889. The rule is laid down in Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 600, 297 N. W. 19, 22, as follows:

"* * * Noncompensable are cases where the assailant was motivated by personal animosity toward his victim, arising from circumstances wholly unconnected with the employment. Lehman v. B. F. Nelson Mfg. Co. 193 Minn. 462, 258 N. W. 821; In re Wooley v. Minneapolis Equipment Co. 157 Minn. 428, 196 N. W. 477.

"In contrast and compensable are injuries resulting from assault where provocation or motivation arises solely out of the activity of the victim as an employe. Maher v. Duluth Yellow Cab

Co. 172 Minn. 439, 215 N. W. 678; Davis v. S. S. Kresge & Co. 169 Minn. 245, 210 N. W. 1003; Sieger v. Knox & Peterson, 160 Minn. 185, 199 N. W. 573; Hinchuk v. Swift & Co. 149 Minn. 1, 182 N. W. 622.

\* \* \* \* \*

"A noncompensable assault must have been for 'reasons personal' to the victim. Also, it must not have been 'directed against him as an employe *or* because of his employment.'"

There is no dispute as to the facts. We must therefore determine from the undisputed evidence the causal relation between the employment and the injury for which compensation is sought.

The streetcar did not come in contact with Goodland's truck. Because of the fact that the streetcar came within a few feet of the truck, Goodland used language to the motorman strong enough to arouse his anger to the point where he challenged Goodland to a fistic combat. The conversation was so loud that Virgil Carlson, one of the two men who rescued Goodland, was attracted by it when 150 feet away. Goodland then told the motorman that he ought to be reported for his actions, and he was invited by the motorman to go ahead and do so. With that, the first incident closed. After the streetcar had pulled away, Goodland crossed the street to the two men on the corner. Goodland claims that he wanted them as witnesses. He was asked why he wanted the two men as witnesses. He testified: "Well, it is our duty to, when we handle a truck, to report any incident regardless if it is a pedestrian, customer or a dog, we have to report it" to the superintendent of the Donaldson company; that "if it needs to be made a report to the insurance company that we are supposed to make out a report." He was asked: "Is it your understanding that you are to make a report of such an incident even though there is no accident?" to which he replied: "Yes, we are supposed to report it, anything that we are involved in. \* \* \* Concerning the truck, \* \* \*." When Goodland came over to the two men, he did not ask them if they had seen the near accident, but if they had seen "the way this motorman acted," and if they would be witnesses to his actions.

It is evident that Goodland was not seeking witnesses to support his claimed facts as to the near accident, but witnesses to back him up in his report to the motorman's employer, in which, at least, there would be a suggestion that he be disciplined. He was referring to the argument and the motorman's invitation to Goodland to fight, not to the incident which prompted Goodland's fight-provoking language. The answer which the men on the corner gave to Goodland is further evidence of this. They told him that as they themselves were motormen they did not want to be witnesses, and further suggested that it was a hot day and that the motorman most likely was overheated, and that Goodland should overlook it. This appears to be sound advice. The weather and the motorman's overheated condition could have had nothing to do with the near accident. The observation must have been made with reference to the worked-up mental condition of the motorman which prompted him to want to fight. Goodland then proceeded to make uncomplimentary statements, not against the motorman with whom he had had an argument, but against motormen as a class, which of course included the two men he was talking to. They were offended, and as a result Goodland was pummeled by one of them.

Goodland claims that it was his duty to submit a report of any incident involving his truck to his superintendent, and that he went over to speak to the two men to ask them if they would be willing to have their names submitted as witnesses to the near accident. The reason he gives for speaking to the two men is not at all persuasive. The conversation between Goodland and the two men, which is testified to by Goodland himself and which we have detailed, does not support the reason he gives. Furthermore, we cannot conceive of any reason why any superintendent would require a report of a near accident such as this, or what he would do with it if he received such a report. The employer's insurer certainly would not want such a report for its files. Near accidents of this kind create no basis for claims.

On the facts as they have been presented to us, we are of the opinion that the assailant of Goodland was motivated by personal

animosity toward him growing out of Goodland's expressed disparaging opinion of motormen in general, and that the assault was not directed against him as an employe or because of his employment, but for reasons entirely personal to Goodland. There was no causal relation between the employment and the injury for which compensation is sought. Applying the law as stated in the cases heretofore cited to the facts in the case, it is clear that the injuries arising out of the assault complained of are noncompensable.

Writ discharged and order affirmed.