Thomas J. FOLEY and Joan M. Foley, as Trustees for the Heirs and next of kin of Mary Catherine Foley, Respondents,

v.

HONEYWELL, INC., petitioner, Appellant.

No. CO–91–88.

Supreme Court of Minnesota.

Aug. 14, 1992.

Rehearing Denied Sept. 29, 1992.

Eric J. Magnuson, Richard J. Nygaard, and William J. Egan, Rider, Bennett, Egan & Arundel, Minneapolis, for appellant.

J. Michael Dady, Lindquist & Vennum, Minneapolis, for respondents.

GARDEBRING, Justice.

This case arises out of the tragic death of Mary Foley, an employee of appellant, Honeywell, Inc. (Honeywell), who was sexually assaulted and then murdered in the Honeywell parking ramp in June 1988. Honeywell's workers' compensation insurance carrier paid appropriate benefits, but Mary Foley's family commenced a wrongful death action against Honeywell, alleging that Honeywell failed to maintain sufficient security in the parking ramp. Honeywell moved the trial court to dismiss the lawsuit for failure to state a claim upon which relief could be granted, arguing that the workers' compensation scheme provided the exclusive remedy. The trial court denied Honeywell's motion, and at the same time certified the question of whether Mary Foley's assault and murder were compensable personal injuries under Minn. Stat. § 176.011, subd. 16 (1990). The ques-

tion, certified pursuant to Minn.R.Civ. App.P. 103.03, read as follows:

> Was Mary Foley's assault and murder a compensable injury under the Minnesota Workers' Compensation Statute, Section 176.011(16) thereby causing workers' compensation to become the Plaintiff's exclusive remedy? [1]

In denying Honeywell's motion, which it had properly treated as a motion for summary judgment, the trial court concluded that Mary Foley's death, although within the course of her employment, did not arise out of her employment with Honeywell. Therefore it found that workers' compensation coverage was not the Foley family's sole remedy. The trial court also found that the assault exception of Minn.Stat. § 176.011, subd. 16, applied to this situation, providing an alternative ground for the decision that workers' compensation was not the Foley family's sole remedy.

Honeywell appealed the decision of the trial court to the court of appeals, which dismissed the appeal, determining that the question presented was not properly certified. We granted Honeywell's petition for review.

■■■ Given the unusual procedural history of this case, we are presented with a decision on the appropriate scope of our review. We could simply review the decision of the court of appeals as to proper certification, and remand it if we determined the question to be properly certified. Or we could answer the certified question. A trial court may properly certify a question if the issue presented is both important and ·doubtful. Minn.R.Civ.App.P. 103.03. An issue is important if its resolution will have statewide impact. *Emme v. C.O.M.B.*, 418 N.W.2d 176, 180 (Minn.1988). A doubtful issue is an issue on which there is no controlling precedent. *Id.* at 179. The issues presented by the certified question are certainly important, because any change or clarification in the definition of compensable personal injury could have significant statewide impact. While it is not as clear that the issues presented are doubtful, we accept the question, and answer it in the interest of justice. As to the appropriate standard of review, the certified question is a matter of law and thus this court is free to independently review it on appeal. *Meyering v. Wessels*, 383 N.W.2d 670, 672 (Minn.1986).

Mary Foley was employed by Honeywell as the Corporate Manager of Medical Health Services. Her job was a managerial position, and she often worked evenings and on weekends. On Sunday afternoon, June 12, 1988, Foley drove to the Honeywell offices and parked her car in the Honeywell parking ramp, a ramp which was used by both Honeywell employees and visitors. The Honeywell office complex was located in a high crime neighborhood, and there had been attacks on Honeywell employees in the parking ramp before. Mary Foley signed into the building at 2:35 p.m., and signed out on her way back to her car at 3:30 p.m. As she was walking to her car she was assaulted and murdered by David Anthony Thomas. Thomas was a serial rapist who had entered the ramp to look for money to steal from cars and had never seen Mary Foley before that Sunday afternoon. Thomas was apprehended and confessed to the crime.

Jean Bey, who worked with Mary Foley, saw her the evening before the murder. Foley told her she was going into the office on Sunday to work on a memo, and asked Bey to review the memo before it was typed. On Monday morning, the day after Foley's murder, Bey found the handwritten memo on her desk, with a note attached asking her to review it. There were also papers found around Foley's body in the ramp which pertained to a project on which she was working at Honeywell.

Ellen Foley, Mary Foley's sister, saw her on the Saturday afternoon before the mur-

---

**1.** This case, and the companion case which follows, *Lyle Starrett v. Pier Foundry*, 488 N.W.2d 273 (Minn.1992), share a common issue. The issue is whether the injuries received by employees while on the employer's premises in the employer's parking lot, were injuries "arising out of" their employment, and thus are compensable personal injuries under Minn.Stat. § 176.-021, subd. 1, and Minn.Stat. § 176.011, subd. 16 (1990).

der. Mary Foley did not say anything about going into the office on Sunday, and her sister testified that Mary Foley usually did tell her if she had to work. She also said that Mary Foley often went into the office to do personal work on the computer, to write letters, and to make personal phone calls. She said that because Mary Foley's apartment was not air-conditioned, she often went into the office to escape the heat. The Honeywell offices, with the exception of the computer area and the security guards' box, were not air-conditioned on weekends.

Minnesota's Workers' Compensation Act (the Act) was originally passed in 1913. Act of April 24, 1913, ch. 467, 1913 Minn. Laws 675. The Act, like that of many other states, was designed to give workers immediate recovery for their injuries suffered while on the job, without regard to the common law's "three evil sisters," contributory negligence, the fellow-servant rule, and assumption of risk. *See* 1 A. Larson, *The Law of Workmen's Compensation* §§ 5.00–5.30 (1992) (hereinafter 1 A. Larson) and Bradt, *An Examination of the "Arising out of" and the "In the course of" Requirements under the Minnesota Workers' Compensation Law*, 6 Wm. Mitchell L.Rev. 533, 535–40 (1980). In return, employers were protected by the exclusivity provisions of the Act from negligence suits likely to produce large verdicts. *See* 1 A. Larson §§ 1.00–1.10; *see also Boryca v. Marvin Lumber & Cedar*, 487 N.W.2d 876, 879, note 3 (Minn.1992).

■ Workers seeking benefits from the Act have the burden of proving that their injuries are personal injuries arising out of and in the course of their employment. Minn.Stat. § 176.021, subd. 1. The Act defines "personal injury" as follows:

> "Personal injury" means injury arising out of and in the course of employment * * *; but does not cover an employee except while engaged in, on, or about the premises where the employee's services require the employee's presence as a part

of such service at the time of the injury and during the hours of such service. Where the employer regularly furnished transportation to employees to and from the place of employment such employees are subject to this chapter while being so transported, but shall not include an injury caused by the act of a third person or fellow employee intended to injure the employee because of personal reasons, and not directed against the employee as an employee, or because of the employment.

Minn.Stat. § 176.011, subd. 16. Thus, in order to be a compensable injury under the act, an injury must arise out of the employment, must be in the course of the employment and must not come within the "assault exception."

■ The phrase "arising out of" means that there must be some causal connection between the injury and the employment. *Gibberd v. Control Data Corp.*, 424 N.W.2d 776, 780 (Minn.1988); *Novack v. Montgomery Ward*, 158 Minn. 495, 498, 198 N.W. 290, 292 (1924). This causal connection does not mean that the employment has to be the proximate cause of the injury. *Gibberd*, 424 N.W.2d at 780; *Hanson v. Robitshek–Schneider Co.*, 209 Minn. 596, 598–99, 297 N.W. 19, 21 (1941). In *Hanson*, we said:

> The phrase "out of" expresses a factor of source or contribution rather than cause in the sense of being proximate or direct. Because of the intervening wrongful act of third parties or some such extrinsic contribution, the employment may not be the proximate cause. But it may be nonetheless so much source of the event that the latter in a very real and decisive sense arises out of the employment * * *. So it is enough that injury follows "as a natural incident of the work * * * as a result of the exposure occasioned by the nature of the employment."

*Id.* at 21 (quoting *Novack*, 158 Minn. at 495, 198 N.W. at 292).[2]

---

**2.** The trial court failed to give consideration to our early cases on this issue, concluding that they had been invalidated by the 1983 amendment to the Workers Compensation Act, which eliminated the "remedial nature" of the act, and thus removed the need for a "liberal construc-

The trial court found, and appellant argues that the injury did not arise out of Mary Foley's employment because the risk to her as an employee using the parking lot was no different than the risk to other persons, not Honeywell employees, who also used the lot. However, Mary Foley was not a member of the general public using the lot, and her presence at the facility, whether for personal or business reasons, was due to her employment by Honeywell. Thus the risk to her arising from any unsafe conditions in the ramp was associated with her employment, and her injury followed "as a natural incident of the work." We conclude that the test for "arising out of" is met on these facts.

The second test of compensability, that an employee's injury occur in the course of employment, requires that the injury occur within the time and space boundaries of employment. *Gibberd*, 424 N.W.2d at 780; *Nelson v. City of St. Paul*, 249 Minn. 53, 56, 81 N.W.2d 272, 276 (1957). Injuries that occur on an employer's premises, while employees are going to and from their work stations, or at lunchtime, are compensable. *Faust v. State, Dep't of Revenue*, 312 Minn. 438, 439, 252 N.W.2d 855, 856 (1977). This court has defined "premises" to include employer parking lots, even those used by both employees and the public. *Merrill v. J.C. Penney*, 256 N.W.2d 518, 520 (Minn.1977); *Goff v. Farmers' Union Accounting Serv.*, 308 Minn. 440, 241 N.W.2d 315 (1976). Further, the injury must occur during the hours of service, and that includes a reasonable time both before a person actually begins doing work on the premises and after the work day or shift is complete. *Nelson*, 249 Minn. at 56–57, 81 N.W.2d at 276. A "reasonable" time has included up to 45 minutes before the official work day begins, *Satack v. State*, 275 N.W.2d 556, 557, 31 W.C.D. 260, 261 (Minn.1980); and up to an hour after the official work day ended. *Blattner v. Royal Order of Moose*, 264 Minn. 79, 80–81, 117 N.W.2d 570, 571–72 (1962).

Both parties agree that Mary Foley's job required her to be at the office outside of normal working hours, and so, if she was working on the day of her death, it occurred in the course of her employment. The trial court found there was no material issue of fact as to whether Mary Foley was at her office to work and further found that she was in the course of her employment. However, respondent contends that the question of whether or not Mary Foley was at her office to do work at all is an issue of material fact, and thus summary judgment is not appropriate.

A party opposing a motion for summary judgment cannot rely on general facts, but must present specific facts in existence which create a genuine issue for trial. *Moundsview Indep. Sch. Dist. No. 621 v. Buetow & Assocs.*, 253 N.W.2d 836, 838 (Minn.1977). Honeywell presented evidence that Mary Foley told a co-worker that she was going into the office on Sunday to work on a specific project, and that the project was completed and was found on the co-workers desk on Monday morning. There were also papers involving Honeywell projects on which Mary Foley was working found around her body. Respondent presented evidence that Mary Foley did not tell any family member that she was planning to go into the office, and that Mary Foley often did not work when she was in the office on weekends. However, there is no evidence, other than speculation, that she did not work on that Sunday. No one in her family has any personal knowledge that she did not work on that Sunday. Without any specific facts in existence which create a genuine issue for trial, this is not a question of material fact. There is no issue of material fact as to whether Mary Foley was working on the day of her death. Therefore, we conclude

tion" of the statute. As we noted in *Hagen v. Venem*, 366 N.W.2d 280, 285 (Minn.1985), the amendment simply requires that the Act be construed in a non-discriminatory manner. We do not read the 1983 amendment to abolish previous case law, and wish to specifically note its continued validity, except, of course, where overruled by this court or altered by the legislature.

that her death is a compensable injury under the Act.

Finally, respondent argues that Mary Foley's injuries are not compensable personal injuries as defined by the Act because an exception applies. The definition of "personal injury" in the Act excludes injuries "caused by the act of a third person or fellow employee intended to injure the employee because of personal reasons, and not directed against the employee as an employee, or because of the employment" (hereinafter the "assault exception"). Minn.Stat. § 176.011, subd. 16. Respondent argues that sexual assaults are personal attacks, intended to injure the employee for personal reasons, and thus injuries suffered as a result of sexual assaults satisfy the assault exception and are not "personal injuries" as defined by Minn. Stat. § 176.011, subd. 16. This court recently addressed the application of the assault exception in the case of a random sexual attack on an employee. A random sexual attack on an employee is not intended to injure the employee for personal reasons, and therefore the assault exception does not apply. *Bear v. Honeywell,* 468 N.W.2d 546, 547 (Minn.1991). The record reveals that Mary Foley's attacker did not attack her for personal reasons, as personal reasons was defined in *Bear.* In this situation, the assault exception does not apply.

Mary Foley's injuries and death arose out of and in the course of employment, and the assault exception does not apply. Therefore, the provisions of the Workers' Compensation Act are the respondents' exclusive remedy. We answer the certified question in the affirmative.

SIMONETT, J., took no part in the consideration or decision of this case.