No. 4259

Second Circuit

GARRETT v. TEXAS-LOUISIANA POWER CO.

(May 20, 1932. Opinion and Decree.)

Seals & Atkins, of Homer, attorneys for plaintiff, appellee.

Thatcher, Browne, Porteous & Myers, of Shreveport, and B. F. Barnette, of Arcadia, attorneys for defendant, appellant.

McGREGOR, J. In this suit the plaintiff, Mrs. Val Garrett, widow of Val Garrett, seeks to . recover from the defendant the sum of $3,657 in weekly installments of $12.19, during a period of 300 weeks, as compensation · for the alleged accidental death of her husband.

After answer had been filed, and when the case was ready for trial, it was submitted to the trial court on an agreed statement of facts signed by the attorneys representing the plaintiff and the defendant. There is, therefore, no necessity for discussing the pleadings, and our discussion will be confined to the facts as admitted in the said statement of facts, the pertinent paragraphs of which are as follows:

"It is admitted that plaintiff is the surviving widow of Val Garrett; that she was married to Val Garrett on August 14, 1921, and that there are no children issue of said marriage; that Val Garrett died on January 25, 1931, and that plaintiff was at the time of his death solely dependent on the said Val Garrett for her livelihood.

"It is further admitted that the Texas-Louisiana Power Company is a corporation authorized to do business in the State of Louisiana, and owns and operates a power plant in the Town of Arcadia, Bienville Parish, Louisiana, and has been operating said power plant for several years, and that on January 25, 1931, Val Garrett, the deceased husband of plaintiff, was employed by the defendant, and had been

employed for several months, at and in said power plant at Arcadia as chief engineer and operating engineer at a weekly wage of $37.50, and it is admitted that James B. Roberson was on January 25, 1931, employed by defendant at its said power plant as an engineer to perform duties similar to those of said Garrett, except the duties of chief engineer.

"It is admitted that on Saturday night prior to the killing, Garrett brought a quart of whiskey down to the plant, and that after Garrett had poured a pint of same in a pint bottle, Roberson objected to his leaving the whiskey on the premises while Roberson was on his shift, and that after a considerable dispute, Garrett took the whiskey away with him.

"And it is further admitted that Val Garrett, under his employment with the defendant, was required to be in and about the said power plant of the defendant at Arcadia whenever in his judgment his presence was necessary; that on Sunday morning, January 25, 1931, the said Val Garrett was at and in the said power plant, clothed in his work clothes, from 8:00 o'clock A. M. to 12 o'clock noon performing his duties as operating engineer, cleaning up the machinery and premises, and preparing for an inspection which he understood was to be made of said plant on the following Tuesday 'or Wednesday; that the said Val Garrett left the plant at about 12:00 o'clock noon on said date and went to his home for lunch, wearing his work clothes, leaving his street clothes in a locker in the work room of said plant; that just before going home for lunch, he, Garrett, gave orders to the said James B. Roberson to move certain oil barrels which were located in the main room of the plant and that about 12:30 o'clock P. M. on said date, January 25, 1931, the said Val Garrett returned to the said plant, still clothed in his work clothes, and inquired of the said Roberson with reference to the removal of the barrels, as follows:

"'Why in the God damn hell have you not removed them barrels, like I told you?' to which Roberson made no reply, and therefore Garrett turned suddenly and went over to the barrels and moved two of them to the west side of the engine

room; and Roberson assisted him in moving the third barrel, Garrett cursing and mumbling to himself while in the act of moving the barrels.

"That in moving the barrel Roberson got oil on his hands and went to the lavatory, which is located in the side room or work room in said plant, in order to wash the oil from his hands; that after he had washed his hands, desiring a cigarette from his clothes which were in the locker in said work room, Roberson went to the locker in question to get the cigarette and was in the act of reaching for it when Garrett came into the side room where Roberson was, and said to him:

"'I want you to keep out of my business. It is none of your God damn business how much whiskey I keep down here. I'm the boss of this plant, and will run it like I damn please,' to which Roberson replied:

"'I don't care how much whiskey you keep down here, or how much you have, but you know it is against the rules of the company to have it here on the job, and you must not have it here on my run, because if the boss comes along and finds it, I would get fired. I have a wife and baby to support and can't afford to lose my job.'

"Then Garrett said:

"'God damn you and your God damn wife too. I have been aiming to break your neck, I will do it now.'

"Roberson then turned in time to see Garrett advancing upon him, and reached into the locker and got his pistol, and started firing at Garrett, and Garrett was killed by the said Roberson and died in the work room of said plant, in the town of Arcadia, Louisiana, at about 12:35 o'clock P. M.; that Roberson thought Garrett,— by reason of his having, just prior to the shooting, his right arm and hand behind him when he advanced on him,—was armed with a weapon, but that Garrett was not armed and had in his right hand behind his body, a piece of used oily cotton waste employed in said plant in wiping and cleaning machinery. It is admitted that Roberson was charged with murder, but indicted by the Grand Jury for manslaught-

er only, for which he was tried and acquitted.

"It is admitted that Garrett weighed, 180 pounds and Roberson 130 pounds."

The lower court, in a well-written opinion, rendered judgment in favor of the plaintiff as prayed for, and the defendant has appealed.

The defense is based upon section 28 of the Workmen's Compensation Law (Act No. 20 of 1914), which provides:

"That no compensation shall be allowed for an injury caused by the injured employee's wilful intention to injure * * * another. * * *"

In deciding the case, it is unnecessary to consider the question as to whether the death of deceased was an accident arising out of and in the course of his employment by the defendant, for, as we view the agreed statement of facts, the only question to be determined is whether his death was caused by his intention to injure Roberson, his fellow employee, who killed him.

A careful reading of the statement discloses beyond a doubt that Garrett was the aggressor throughout the difficulty. He weighed 180 pounds to Roberson's 130. He cursed Roberson on account of not moving three barrels which he had ordered him to move. Without resenting this conduct on the part of Garrett, Roberson assisted in moving the barrels, and then left him and went to the lavatory to wash his hands. Garrett pursued him there and began another quarrel about Roberson's protest on the night before against his keeping whiskey on the premises in violation of law and contrary to the rules and regulations of the defendant company. It is evident that Garrett was exceedingly angry and was bent on doing bodily harm to Roberson. He knew he was his physical superior and cursed him and his wife in an apparent effort to cause Roberson to make an attack on him. When it seemed that Roberson would not give him the advantage of beginning the attack, he declared in a fit of anger, "I have been aiming to break your neck, I will do it now." As he uttered these words, he advanced upon Roberson in a hostile and threatening attitude as if to put his words into action. When Roberson saw him advancing thus upon him, saying that he had been aiming to break his neck and that he was going to do it at that time, there was nothing left for him to do but defend himself as best he could. The result was the death of Garrett. The death would not have occurred if Garrett had not advanced upon Roberson threatening to break his neck. Who can doubt that Garrett's death was caused directly by his intention to injure Roberson, and by his attempt to put this intention into execution? The question as to whether he was armed is not important. Because of the difference in sizes, he evidently did not consider that he needed to be armed in order to break Roberson's neck, as he threatened to do.

It is true that just a very few minutes before he was killed Garrett was performing service or work within the scope of his employment, but, that does not alter the fact that he met his death at the hands of Roberson while and because he was intending and trying to injure the man who killed him in self-defense.

Counsel cites the case of Guderian v. Sterling Sugar & Ry. Co., Ltd., 151 La. 59, 91 So. 546, 548, as follows:

"When a foreman, in the performance of his duty, is assaulted by a laborer under him, and is injured as a consequence, the injury is considered as caused by an accident within the meaning of Employers' Liability Acts."

With due deference to the statement of counsel for the plaintiff that the cited case is on all fours with the one under consideration, we find no comparison between them. In the present case the foreman or superior employee was the aggressor and was not in the performance of any duties, but was violating, not only his duty, but the law as well, when he made the unprovoked attack upon the man who killed him in self-defense.

It would be a dangerous precedent and would violate the spirit of the law to hold that, because a man is actually performing service within the scope of his employment at the moment when he receives an injury at the hands of a fellow employee, he is entitled to compensation, even though the injury inflicted by his fellow employee is inflicted because of his expressed intention and actual attempt to injure the fellow employee, and when therefore the injury is inflicted by the fellow employee in self-defense.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and the demand of the plaintiff is rejected and her suit dismissed at her cost in both courts.