FEDERAL UNDERWRITERS EXCHANGE V. LONZO SAMUEL.

No. 7827. Decided March 11, 1942.
(160 S. W., 2d Series, 61.)

*Sharfstein, Bell, Weinert & Nelson,* of Beaumont, for plaintiff in error.

In determining whether the action of a claimant for compensation which results in his injury constitutes a "willful intention and attempt to unlawfully injure some other person," the existence of passion and inflamed mind on the part of one committing an assault does not change the nature of the offense from an assault, regardless of the source of such inflamed mind, but is a mere circumstance which might mitigate the punishment and hence is without effect in its application to the provisions of the workmen's compensation act. Texas Indemnity Ins. Co. v. Dunlap, 68 S. W. (2d) 664; Carter v. State, 12 Texas 500; Garner v. State, 34 Texas Crim. Rep., 356, 30 S. W. 782.

*Maynard R. Heaner* and *Kenneth H. Aynesworth, Jr.*, both of Houston, for defendant in error.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a workmen's compensation case. Lonzo Samuel is the injured employee, Burrus Lumber Company the employer, and Federal Underwriters Exchange the compensation insurance carrier. Samuel was denied compensation by the Industrial Accident Board, and duly appealed to the District Court of Jefferson County, Texas. Trial was had in that court with the aid of a jury, but at the close of the testimony the trial court instructed the jury to return a verdict for Federal Underwriters Exchange. The verdict was returned as directed, and judgment was entered accordingly. On appeal by Samuel to the Court of Civil Appeals, at Beaumont, that court reversed the judgment of the trial court and remanded the cause for a new trial. 145 S. W. (2d) 611.

The record before us contains two opinions, one signed by Associate Justice O'Quinn, and one signed by Chief Justice Walker and Associate Justice Combs. After a careful reading of the two opinions we have reached the conclusion that both constitute the opinion of the court. We reach this conclusion because we interpret the majority opinion to agree with the minority opinion as far as it goes, and then to give additional reasons for holding that the claimant, Samuel, was entitled, in this instance, to have his case submitted to the jury.

The opinion of the Court of Civil Appeals written by Justice O'Quinn makes a very complete and fair statement of the

facts of this case as shown by this record. We therefore adopt and reproduce the same here:

"On November 28, 1938, the Burrus Lumber Company was operating a sawmill manufacturing lumber. Appellant and one Edgar Terrell were two of its employees. Appellant worked at rolling logs onto a conveyor chain that carried logs from a pile where they were unloaded from railway cars. Some times when a log was thrown on the chain it would twist around crooked and would have to be pulled straight before it could be carried on the chain. Edgar Terrell worked as a 'tong hooker'—tong the logs and pull or twist them into the position sought. Some of the logs became out of position and Mr. Roy J. Christian, who was in charge of the loading machine—handling logs for the mill, and under whom Lonzo Samuel and Edgar Terrell worked—told Terrell to go try to straighten out some of the logs that had been thrown down from the car on the pile where Samuel was placing them onto the chain so as to help Samuel; Terrell went down to 'hook' the logs, and Samuel began talking to him—the nature of the talk was such as we refrain to state it—and Terrell struck Samuel with his fist and they fell to the ground fighting. Almost immediately—two or three minutes Mr. Christian estimated—another of the employees pulled Terrell off of Samuel. Terrell immediately after he was pulled off of Samuel left the scene of the fight and walked around the pond and pile of logs and on up near the car from which he had been unloading logs when he was told by Mr. Christian to go and help Samuel, where he stopped. Samuel immediately after he got up when Terrell left him, went some 15 or 20 steps (under the mill) and picked up an iron rod 1/2 inch in diameter and (estimated by Mr. Christian at 'about three and a half or four feet long,' which was about '15 or 20 steps from where scuffling,') and followed Terrell to where he, Terrell, had stopped by the log car where he had been unloading logs, with the iron bar in one hand drawn back as if to strike—he also had drawn his pocket knife out of his pocket and had it open in his other hand drawn up in front of his chest in a striking attitude. When he, Samuel, got to within about three feet of Terrell he stopped. In the meantime while Samuel was following Terrell, or advancing on him, he, Terrell, picked up a piece of two by four scantling about four feet long and drew it back as if to strike, and called on Samuel to stop and that if he did not stop and leave him alone, he, Terrell, would hit him. At that time Samuel did not stop but continued to advance until he was within

some three feet of Terrell when he stopped. As Samuel advanced toward Terrell, Terrell backed some two or three steps to against the log car. Mr. Christian described that portion of the occurrence:

" 'Q. You mean that Lonzo went at him? A. Yes, sir, with the bar of iron. He (Terrell) got up against a car there, and Edgar told him if he didn't go on and let him alone he was going to hit him, and the negro just kept walking over to him, and Edgar hit him over the head with a piece of two by four about three and a half or four feet long'—knocking him unconscious and seriously injuring him.

"Samuel said nothing while he was following Terrell. Terrell picked up the two by four where he was standing by the log car. The interval of time between the first fight when Terrell knocked Samuel down and got on him and was striking him with his fist and was pulled off, and when Samuel was knocked down by the two by four scantling, was variously estimated at from three or four minutes to five or ten minutes. The record does not reflect that any other roughness had ever occurred between them."

Our Workmen's Compensation statute, Sec. 1, Subd. 4, of Article 8309, R. C. S. 1925, provides:

"The term 'injury sustained in the course of employment,' as used in this law, shall not include:

\*   \*   \*   \*

"4. An injury caused by the employe's willful intention and attempt * * * to unlawfully injure some other person, * * *."

■ The above statute is plain and unambiguous. It, in effect, says that if an employee covered by insurance under our Workmen's Compensation Law is injured in the course of his employment, said injury is not compensable if it is caused by the employee's willful intention and attempt to unlawfully injure some other person. Simply stated, the above statute means that if an employee receives an injury in the course of his employment he cannot recover compensation therefor if such injury results from his making an unlawful assault upon another person with the intention of injuring him.

Article 1138 of our Penal Code provides:

"The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the

degree of violence used, is an assault and battery. Any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it, an immediate intention, coupled with an ability to commit a battery, is an assault."

In our opinion, the facts recited in the opinion of the Court of Civil Appeals, above quoted and adopted, show conclusively that Samuel received the injuries made the basis of this compensation claim while making an unlawful assault upon Edgar Terrell, with intent to injure said Terrell. The facts of this record show that after Samuel and Terrell had engaged in a fight they were separated by another employee. Terrell immediately left the scene of the fight and went back to the place where his duties called for him to be. Samuel was then in no danger from Terrell. In spite of this, Samuel got an iron rod one-half inch in diameter and about three feet long. Samuel then followed Terrell to where he, Terrell, had stopped by a log car where Terrell's employment called for him to be. At this time Samuel had an iron rod drawn back as if to strike Terrell. Also, he had in his other hand an open knife. The knife was drawn in a striking attitude. While Samuel was following Terrell, he, Terrell, picked up a piece of two by four scantling about four feet long. Terrell, with this scantling in his hands, continued to retreat from Samuel until he, Terrell, was against the log car. During such retreat Terrell was calling on Samuel to stop, and telling him, Samuel, he would hit him if he did not stop. Disregarding Terrell's warning, Samuel did not stop, but continued to advance. Terrell had retreated as far as he could. Terrell then struck Samuel to prevent him from doing him injury with one or both of the weapons he, Samuel, was advancing on Terrell with. To our minds, the above facts plainly bring this case within the provisions of Section 1, Article 8309, above quoted. Samuel, at the time he was injured, was undoubtedly making an unlawful assault on Terrell with intent to injure him, within the meaning of Article 1138 of our Penal Code, supra. Furthermore, such assault was not justified by any of the exceptions set out in Article 1142 of our Penal Code.

The opinion written by Associate Justice O'Quinn holds that the trial court erred in not submitting this case to the jury, because the evidence raises an issue as to whether or not Samuel and Terrell had one continuous fight from the time they first engaged in combat until Samuel was struck by Terrell. Even if it could be said that one continuous fight would

alter Samuel's rights in this case; a question we do not decide, still we think the evidence in this record does not even raise such a fact issue. Regardless of what the circumstances were which brought about the initial difficulty, the two men were separated and Terrell left the place of combat and retired to his place of labor. Samuel, at a time when all danger to himself had ceased, also left the place of combat, armed himself with two weapons, and pursued Terrell, and by his own unlawful conduct caused Terrell to strike him. In our opinion, such a record does not raise a fact issue of one continuous fight. Faubian v. State, 83 Texas Crim. App. 234, 203 S. W. 897.

■ The opinion signed by the majority of the Court of Civil Appeals holds that even if Samuel renewed the difficulty with Terrell after the initial combat had ceased, still the case should have gone to the jury because the evidence raises an issue as to whether or not Samuel's act was voluntary. In this connection, the opinion holds that if Samuel's acts in arming himself and pursuing Terrell, after he had been struck by Terrell, and after the two had been separated, were "in response to a passion beyond his control, aroused by the assault made upon him by Terrell, and which completely overturned his reason from the time he started to approach Terrell until Terrell struck him, then his assault on Terrell—his approach to Terrell with threatening gestures—must be regarded as involuntary, and as free of that criminal or intentional element necessary under second Sub-section 4 of Sec. 1 of Art. 8309, to preclude his right to recover." We are not in accord with the above ruling. A judgment in this case for Samuel could not be sustained upon the theory of passion or inflamed mind on his part. Such conditions do not make an assault lawful, but, at most, only mitigate the punishment. Indemnity Ins. Co. of North America v. Scott, 298 S. W. 414.

The majority opinion of the Court of Civil Appeals cites the Scott case, supra, in support of its ruling regarding the question under discussion. A reading of the opinion of the Commission will disclose that it, in a way, supports the ruling of the Court of Civil Appeals. However, an examination of the authority will show that the Supreme Court in entering the judgment recommended by the Commission, not only did not approve that part of the opinion, but expressly disapproved it. We here quote the ruling of the Supreme Court:

"We think the judgment cannot be sustained upon the theory of passion or an inflamed mind on the part of Scott. Adequate

cause does not make an assault lawful, but, at most, is only a mitigation."

The ruling announced by the Supreme Court, just above quoted, is in. full accord with the rule of law adhered to by our Court of Criminal Appeals. Leache v. State, 22 Texas Crim. App. 279, 3 S. W. 539, 58 Am. Rep. 638. In the case just cited our Court of Criminal Appeals announced the rule as follows:

"Ungovernable passion is not insanity, and one whose power of will is not impaired by disease, and who, yielding to passion, slays another, is subject to the punishment fixed by law."

The judgment of the Court of Civil Appeals is reversed, and the judgment of the district court affirmed.

Opinion delivered March 11, 1942.