HORVATH v. LA FOND.

1. WORKMEN'S COMPENSATION — ASSAULT — DEATH — PROXIMATE CAUSE—DEPENDENTS.

Dependents of perpetrator of vicious and unprovoked assault upon fellow employee who killed plaintiff's decedent in the course of defense were not entitled to workmen's compensation where there was no causal relation between decedent's duties as an employee and the assault.

2. SAME—ASSAULT—DEATH—PROXIMATE CAUSE.

Death of perpetrator of vicious and unprovoked assault upon fellow employee, which assault was not causally connected with the employment, did not, as a matter of law, arise out of employment.

3. SAME—ASSAULT—PROXIMATE CAUSE.

If one employee assaults another employee solely to gratify his feeling of anger or hatred, the injury results from the voluntary act of the assailant, and cannot be said to arise either directly out of the employment or as an incident of it.

4. SAME—PROXIMATE CAUSE.

An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.

Appeal from Department of Labor and Industry. Submitted January 13, 1943. (Docket No. 60, Calendar No. 42,240.) Decided April 6, 1943.

Carol Horvath, widow, and Andrew and Paul Horvath, minor children, of Andrew Horvath, deceased, presented their claim against M. A. La

Fond, employer, and Standard Accident Insurance Company, insurer, for compensation for death while in defendant's employ. Award to plaintiffs. Defendants appeal. Reversed.

*Roger P. O'Conner* and *S. Gerard Conklin,* for plaintiffs.

*Lowell. C. Stellberger* (*Lightner, Crawford, Sweeny, Dodd & Mayer,* of counsel), for defendants.

North, J. Defendant, M. A. La Fond, is the owner and operator of four cigar stores in Detroit. He employed Andrew Horvath, husband of plaintiff Carol Horvath, and also one John Gaines. As the result of an assault by Horvath on Gaines, the latter fatally shot the former. Plaintiffs, as dependents, obtained an award of compensation. The employer and the Standard Accident Insurance Company, carrier of the compensation insurance risk, have appealed. The only question raised is whether the department erred in holding that Horvath's fatal injury arose out of his employment.

There is no material dispute in the testimony which discloses the following facts. Gaines seemingly was somewhat of a general service man. Some of his work was in the branch stores, the main store being on Woodward avenue. Gaines also worked in and about this main store, in the basement of which the so-called factory part of the employer's business was carried on. Part of the factory or basement work was the mixing or blending of bulk tobaccos. This was done by Gaines. Primarily Horvath's duties were those of a retail salesman in charge of the pipe department in the Woodward avenue store; but he also was charged with placing merchandise such as pipes in the stock of the branch stores. Around

11 o'clock in the forenoon of the day Horvath was shot, his employer instructed him to take some pipes to one of the branch stores. About 2 o'clock in the afternoon, the employer, discovering that Horvath had not taken the pipes to the branch store, instructed Gaines to select the pipes and deliver them. After so instructing Gaines, the employer went up to his office which was located in a balcony of the store. Gaines began sorting out some of the pipes and, as he was doing so, Horvath came where Gaines was working, kicked him, and told him to leave the pipes alone. Thereupon Gaines reported to the employer that Horvath had told him not to take the pipes; and the employer then called down from the balcony, evidently to Horvath or some of the other employees, and told them to get the pipes over to the branch store. Gaines then went about his own work and approximately 20 minutes later while he and another employee were in the basement at work they heard someone running down the steps to the basement, making considerable noise and approaching rather fast. This was Horvath coming down from the first floor of the store where he had been in the meantime. As he arrived at the bottom of the stairway, he looked directly at Gaines, started to swear, called him names and proceeded towards him. With his fists closed and shouting that he would teach Gaines "to squawk to the boss about those pipes" and that he would "mash" Gaines' mouth if he did not believe it. The testimony shows that in spite of protests by Gaines, Horvath continued to approach him until he was within about two feet of Gaines when he seemingly tried to seize hold of Gaines and it appeared to Gaines that Horvath was trying to get at his throat. Horvath, glaring at Gaines, made some motions with his hands and Gaines testified he did not know whether Horvath

who was coming still closer was "getting a knife or what he intended to do. * * * When he dropped his hand, I dropped mine. When he come up with his other hand, I come up with mine, and when I come up with mine, I had this little small pistol. Well, when he didn't stop, I guess, well, I said, 'Stop, stop. Don't do it,' and kept saying, 'Stop, don't do it.' " It was at this point the shot was fired, resulting in Horvath's death.

The manner in which the department reached the conclusion that under the above undisputed facts Horvath's death arose out of his employment is indicated by the following from the opinion filed:

"In our opinion, the record also clearly establishes the accident arose out of plaintiffs' decedent's employment. The assault was not provoked by any personal animosity between plaintiffs' decedent and John Gaines. John Gaines positively testified there were no ill feelings between plaintiffs' decedent and him and further that all the arguing and difficulty arose from their work. There is absolutely no proof whatsoever to establish in any manner that the difficulty between plaintiffs' decedent and John Gaines arose over anything other than the work connected with their employment. It was an act in the course of their work which provoked the assault and the fatal injuries were inflicted by anger over an act shortly before committed in the conduct of the work. That plaintiffs' decedent may have been the aggressor is immaterial inasmuch as it was an act done in connection with the work which set in motion the action which ultimately resulted in plaintiffs' decedent's death."

There might be room for applying the above reasoning to the facts in this case if the injured employee had been the one on whom the assault was committed; rather than the one who under the circumstances of this case was unquestionably the de-

liberate aggressor. Substantially 20 minutes had intervened during which, so far as the record discloses, there had been no contact or communication between Horvath and Gaines prior to the time when Horvath left the main floor of the store where his duties placed him. He then went to the basement and deliberately perpetrated a vicious and unprovoked assault upon Gaines; and while so assaulting Horvath met his death. Clearly it would have been contrary to all justice and law if, instead of having suffered a fatal injury, Horvath had suffered a personal injury arising from his own unprovoked assault and had been awarded compensation therefor. In this respect Horvath's dependents, plaintiffs herein, are in the same position as their decedent. It is of no consequence that, as Gaines testified, there was no ill will or hard feelings between him and Horvath. This made Horvath's assault all the more unjustifiable. There was no causal relation between Horvath's duties as an employee and the assault in which he was the aggressor and which proved fatal to him. Under such a record it must be held as a matter of law that his death did not arise out of his employment.

In the instant case it may be said as in an earlier Michigan case:

"Had claimant remained at his work he would not have been injured. His presence at the place of fighting was in pursuance of no demand of his employment. Neither was it in aid of any material interest of his master." *Clark* v. *Clark,* 189 Mich. 652.

We have quoted and applied the law in *Jacquemin* v. *Turner & Seymour Manfg. Co.,* 92 Conn. 382 (103 Atl. 115, L. R. A. 1918 E, 496), stated as follows:

" 'If one employee assaults another employee solely to gratify his feeling of anger or hatred, the injury results from the voluntary act of the assail-

ant, and cannot be said to arise either directly out of the employment or as an incident of it.' '' *Marshall* v. *Baker-Vawter Co.,* 206 Mich. 466.

To the same effect see *Slusher* v. *Pontiac Fire Dept.,* 284 Mich. 657.

"Injuries resulting in the course of employment from assaults to gratify feelings of resentment or enmity are not compensable." *Gray's Case,* 123 Me. 86 (121 Atl. 556).

"There must be some reasonable connection between the injury suffered and the employment or the conditions under which it is pursued." *Jacquemin* v. *Turner & Seymour Manfg. Co., supra.*

"An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Buvia* v. *Oscar Daniels Co.,* 203 Mich. 73 (7 A. L. R. 1301).

In a case wherein the factual background was strikingly similar, compensation was denied under a ruling of the Supreme Court of New York. See *Stillwagon* v. *Callan Brothers, Inc.,* 183 App. Div. 141 (170 N. Y. Supp. 677), affirmed 224 N. Y. 714 (121 N. E. 893).

The award entered is vacated, with costs to appellant.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.