Plaintiff, the widow of Ulrich Burkhardt, deceased, instituted this suit against his employer, the City of Monroe, Louisiana, to recover workmen's compensation. She alleged that her husband met death at the hands of William E. Harris, a fellow workman, the night of May 31, 1947, while performing the duties of his employment as pump operator on Bayou DeSiard; that deceased was shot and killed by said Harris without cause or provocation. *Page 602 
Defendant denies liability to plaintiff to any extent and resists the suit on these grounds, to-wit:
That the killing of Burkhardt by gun shots "did not arise in the course of his employment with the City of Monroe nor was it incidental to or connected with same for the reason that said injury was sustained in an altercation with the said William E. Harris in which the said Burkhardt was the aggressor, and that the blow or blows of the said Harris, which caused the death of the husband of plaintiff, were delivered in self defense. Appearer avers that the death of the said Ulrich Burkhardt was caused by his wilful intention to injure another."
There was judgment rejecting plaintiff's demand and dismissing her suit, from which she appealed to this court.
The deceased and his slayer had worked at the pump house for several months prior to the tragedy. They had different shifts. At the hour of eight o'clock the evening of the tragedy, Burkhardt reported to relieve Harris who had been on duty for several hours. The pump house is near the shore of the bayou but several feet above the water thereof. It is connected with the levee that parallels the shore line by a three foot walk, referred to as the "cat-walk." This walk leads directly into the door through which entrance is gained into the engine room of the pump house.
According to the record there were five witnesses close enough to the scene to observe what was done and, to some extent, what was said by the two men over a period of several minutes prior to the shooting and at the time thereof. These were Mr. and Mrs. T. C. Robinson, Billy Ray Pruitt, age ten, nephew of Mr. Robinson, Miss Irene Hicks and her escort, Thomas A Sims. Miss Hicks and young Sims were in a car not over thirty feet from the spot where the killing occurred and we are constrained to believe were in a better position to observe what was done and to hear what was said than were the other three witnesses.
The testimony of the Robinsons and that of the Pruitt boy as to what each man did and said an instant before the first shot was fired, is in the main, diametrically opposed to that of Miss Hicks and young Sims. If the testimony of the former group should be accepted as reflecting the true facts, the killing was without legal excuse or justification, and, perforce, plaintiff should recover as against the contention that her husband was the aggressor. However, should the testimony of the latter two witnesses be taken at face value, the conclusion is inescapable that Burkhardt was the aggressor in the difficulty that cost him his life; that he left the immediate scene of his employment, followed Harris to near the end of the walk, and there violently assaulted him with a large wrench; and that Harris shot him in defense of his own life. Of course, under such state of facts plaintiff should not recover.
The trial judge accepted the testimony of Miss Hicks and young Sims as being the more reliable version of the facts attending the killing. The grand jury that investigated the case evidently did likewise as Harris was not indicted.
It is certain that very soon after Burkhardt went into the pump house after reporting for duty, something was said by one of them to renew an altercation that occurred between the parties the day before. Animated talk for several minutes ensued. And it is also certain that when Harris left the pump house for the purpose of getting in his car and leaving the scene, Burkhardt followed him at a distance of a few feet along the "cat-walk." Caustic remarks and replies were indulged in by both. The shooting occurred not over ten feet from where the walk's end rests against the side of the levee.
The trial judge, in passing on application for rehearing, gave written reasons for his action denying the same. These reasons, of course, controlled him in denying recovery to plaintiff. With approval, we here reproduce said reasons in full:
"The Court carefully considered the testimony in the case and reviewed same before rendering the original decision. In brief, the testimony in this case was to this effect: That the deceased employee and *Page 603 
a fellow employee by the name of Harris worked at the City pump on Bayou DeSiard which supplies the water to the City of Monroe; that these two employees had difficulty of a personal nature, and the cause of this difficulty was the placing of some illegal fish traps in the Bayou adjacent to the pump station. In other words, the feeling which the testimony shows existed between these two people arose from the question of these fish traps. The testimony further shows that prior to the night on which Burkhardt was killed that there had been trouble between Harris and Burkhardt of a more or less serious nature, and one of the witnesses stated — testified in court — that Burkhardt had made threats as to what he was going to do to Harris on the night in question; that he was going to beat him up, and he had been prevented from doing that before because when they had the prior difficulty that Harris had been able to get a stick or some implement with which to defend himself and Burkhardt did not beat him up then. This witness testified that he went to Harris and cautioned him of the danger he was in and warned him of Burkhardt's threat. The testimony shows that Harris went to the job on the night in question and was armed with a pistol, but the testimony shows that when Burkhardt relieved him that Harris left the pump station and proceeded from the pump station down and across the end of the cat walk leading to the levee where Harris had his car parked, and the evidence clearly shows that he was leaving the place of employment to go to his car and go home, or somewhere away from the job.
"The testimony shows that Burkhardt left the pump station and followed Harris clear on out on to the cat walk. The testimony is not what you would call at variance, because the various witnesses were at different places, and the Court can understand how some witnesses could see things that others could not, but there is testimony in the record that Harris fired after Burkhardt had lunged towards him, and some witness said grabbed him, and that Burkhardt had a wrench in his hand, or some implement in his hand — big implement. There is testimony to that effect, and the testimony clearly shows that when they searched the scene after the trouble they found a big Stilson wrench just below the cat walk in the neighborhood of where this difficulty occurred, but all of the witnesses agreed that Burkhardt left his place of employment and followed Harris out, still pursuing this argument and trouble, and you have the statement of the witness that Burkhardt had previously stated he was going to beat Harris up at this time in question.
"I think that all the testimony clearly shows that Burkhardt was the aggressor; that he provoked this difficulty and that he comes under that exception in the compensation act where his heirs cannot recover. * * *"
Paragraph 1 of Section 28 of the Workmen's Compensation Law, Act 20 of 1914, in part, reads:
"That no compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another * * *."
In construing this provision the courts uniformly have held that if an employee, while in the discharge of his duties, is injured or killed in an attempt to injure or kill another person, he forfeits for himself and his widow and dependent children the beneficent benefits of the Workmen's Compensation Law. This exception to the right to demand compensation of the employer is in its nature a penalty visited upon him who would wilfully take the law into his own hands. The rule is designed to promote a disposition on the part of employees to forbear acts of violence too often resorted to by men to even scores with those persons against whom ill feeling has been engendered, with or without just cause.
This exception was interposed as a defense and upheld in the following cases, to-wit: Gross v. Great Atlantic Pacific Tea Co., La. App., 25 So.2d 837; Morvant v. Aetna Casualty Surety Co., La. App., 181 So. 595; Toney v. George A. Fuller Company et al., La. App., 143 So. 541; Fisher v. Sherrill Hardwood Lumber Company, Inc., 3 La. App. 595. *Page 604 
Whether or not the deceased was the aggressor in the difficulty, is a question of fact; and since the trial judge who saw and heard the witnesses testify, and the grand jury that investigated the case, resolved this issue against the plaintiff's contentions, unusually strong reasons would have to appear to warrant a decision for the plaintiff. Surely, no manifest error appears.
Having held that plaintiff is barred from recovery on the ground above discussed, obviates the necessity of passing on the defense that he was not killed while in the course of his employment.
For the reasons herein assigned, the judgment from which appealed is affirmed at plaintiff's cost.