# HENRIETTA PETRO v. MARTIN BAKING COMPANY AND ANOTHER.[1]

May 15, 1953.

No. 35,941.

[1]Reported in 58 N. W. (2d) 731.

*Thomas J. Spence* and *Kenneth W. Green,* for relators.
*William D. Gunn* and *Donald C. Savelkoul,* for respondent.

CHRISTIANSON, JUSTICE.

Certiorari to the industrial commission to review an order granting compensation for death following a physical encounter between two employees of the Martin Baking Company.

Decedent, Balent Petro, was employed by the Martin Baking Company as a driver-salesman. He was 51 years old, about five feet, five inches tall, weighed about 210 pounds, and suffered from a heart condition. Edward Stokes was a supervisor over the driver-salesmen and weighed about 140 pounds. Decedent's route required him to begin work about 2:30 a.m., which was 2½ to 3 hours earlier than the other driver-salesmen began work. On December 21, 1950, he had already left his employer's premises when the others arrived about 5 a.m. to load their trucks and prepare to make their deliveries. On that morning, Stokes was loading a truck preparatory to taking the route of one of the regular drivers. In the presence of decedent's brother, who was also a driver-salesman for the company, Stokes said, "That dam Balent Petro stole some bags out of my truck." Decedent's brother asked why Stokes thought decedent had taken them and Stokes replied, "Because I saw him take bags out of trucks before." A short time later another driver missed a basket from his truck and inquired what had happened to it. Stokes replied, again in the presence of decedent's brother, "Balent Petro probably took it. He might take anything."

Decedent's brother than called decedent's home to tell him what he was accused of doing. Decedent was not home so his brother talked to decedent's wife, who is the petitioner in these proceedings. Later that morning decedent called A. L. Rosen, sales manager for

the company, and complained about Stokes's accusations, threatening to punch Stokes in the nose. Except for the fact that decedent told his brother the following day, December 22, that he was "after" Stokes, nothing further occurred, so far as the record discloses, until the afternoon of December 23, two days after Stokes made the accusations.

About two o'clock that afternoon decedent had returned from his route to the company garage and was unloading his truck. His wife was at the garage standing near him when Stokes came by and spoke to her. Decedent called Stokes a vile name and made some remark to him regarding Stokes's accusations of two days earlier. This remark was followed by an exchange of words between decedent and Stokes, including a threat by the former to punch Stokes in the nose. Decedent advanced toward Stokes and both "put up" their "dukes." After a short exchange, or attempted exchange, of blows, the two men grappled, fell to the floor, and continued scuffling for a few minutes until Stokes got on top of decedent. At this point decedent's wife came to his aid, and the two men gave up the fight and got up from the floor. After some more words decedent returned to his truck and Stokes left the scene. Stokes returned shortly and the two men again grappled, fell to the floor, scuffled for a few minutes, and then separated. The details of how this second encounter began are not clear.

Following the second encounter, Meyer Herman, owner and manager of the Martin Baking Company, was summoned from his office and he came into the garage and ordered decedent and Stokes to stop arguing. He also directed them to go into the office with Rosen and get their difficulties straightened out. Stokes complied immediately but decedent balked and Herman had to tell him again to go into Rosen's office. Rosen attempted to get the two men to settle their differences, stating that they all had to work and live together, but the argument continued, the shouting at times reaching such volume that it could be heard by those outside the office. During the discussion decedent suddenly slumped back on the settee in

Rosen's office, suffering from a heart attack. In a few minutes he was dead.

The referee who conducted the hearing determined that decedent's death resulted from an accidental injury arising out of and in the course of his employment and awarded compensation to petitioner. On appeal to the industrial commission, the commission affirmed the referee's findings and the award.

■ This case raises for the first time in this jurisdiction the issue whether a so-called "aggressor" in a work-connected altercation may recover workmen's compensation for injuries received in the altercation. Early in the history of our workmen's compensation law, this court determined that an injury resulting from an assault by one employee upon another arose out of the employment where the assault was provoked by a quarrel over some matter connected with the work.[2] But we have never before been faced with the question whether an injury to the employee who initiates the assault can be said to have arisen out of his employment within the meaning of M. S. A. 176.02. The majority of jurisdictions that have passed upon the question have refused compensation to an "aggressor" even though the dispute was work-connected, some on the theory that the injury did not arise out of the employment,[3] others because of statutory defenses granted to the employer.[4] Recently, however, four jurisdictions have granted compensation to persons injured in work-induced disputes without regard to the fact that they were aggressors.[5] We prefer the reasoning of the latter jurisdictions.

[2]Hinchuk v. Swift & Co. 149 Minn. 1, 182 N. W. 622.

[3]*E. g.*, Fischer v. Industrial Comm. 408 Ill. 115, 96 N. E. (2d) 478; Horvath v. La Fond, 305 Mich. 69, 8 N. W. (2d) 915; Vollmer v. Industrial Comm. 254 Wis. 162, 35 N. W. (2d) 304.

[4]*E. g.*, Burkhardt v. City of Monroe (La. App.) 37 So. (2d) 601; Federal Underwriters Exchange v. Samuel, 138 Tex. 444, 160 S. W. (2d) 61.

[5]State Comp. Ins. Fund v. Industrial Acc. Comm. 38 Cal. (2d) 659, 242 P. (2d) 311; Dillon's Case, 324 Mass. 102, 85 N. E. (2d) 69; Newell v. Moreau, 94 N. H. 439, 55 A. (2d) 476; Commr. of Taxation & Finance v. Bronx Hospital, 276 App. Div. 708, 97 N. Y. S. (2d) 120. The views expressed by these four decisions have received the approval of one of the lead-

Basic to those four decisions is the reasoning of Justice Rutledge, then of the United States Court of Appeals for the District of Columbia, in Hartford Acc. & Ind. Co. v. Cardillo, 72 App. D. C. 52, 112 F. (2d) 11, a case in which the claimant was not an aggressor. Justice Rutledge reasoned that a dispute between employees is not necessarily disconnected from their work because it has no relevancy to the immediate task or tendency to further the work, involves a lapse from duty, or contains an element of volition, illegality, or personal anger. The fundamental question is whether the claimant was injured, not merely while he was at his employment, but because he was at his employment, in touch with associations and conditions inseparable from it. He stated (72 App. D. C. 56, 112 F. [2d] 15):

"* * * the environment includes associations as well as conditions, and * * * associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every natural expression. 'Old Man River' is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment."

Having accepted those views, it was only a short step further to allow compensation without regard to aggression, as the four cases referred to above have done. When the accumulated pressures of

ing commentators in the field of workmen's compensation. Horovitz, *The Litigious Phrase: "Arising out of" Employment,* 4 NACCA L. J. 19, 47, 53; Horovitz, *Assaults and Horseplay Under Workmen's Compensation Laws,* 41 Ill. L. Rev. 311, 343, 364.

work-induced or work-aggravated strains and frictions finally erupt into an affray which results in injury to one of the participants, it is artificial to say that an injury to the one who struck the first blow did not arise out of the employment but an injury to the recipient of that blow did arise out of the employment. Therefore, it would be clear, in our opinion, that decedent's death in the instant case would have arisen out of his employment if Stokes's unjustified accusations had been made in decedent's presence, and if decedent's curse, the argument between the two men, and the resultant physical encounter had followed immediately after the accusations.

■ The Martin Baking Company and its insurer contend, however, that the lapse of two days between Stokes's accusations and decedent's attack upon him makes the work connection too remote to permit recovery. They assert, quite correctly, that no decision which has awarded compensation to an aggressor has gone so far as to permit recovery where the aggressor nursed a grudge for two days before making his attack. Their argument is not without merit. This is not to say that we should apply to workmen's compensation cases the doctrine of proximate cause from the law of negligence[6] or the concept of the cooling-off period from the law of homicide. But where the pressures that explode into physical action accumulate from private brooding over an extended period rather than from the human impacts and frictions of the working environment, it may justly be questioned whether the connection between the injury and the employment is not too tenuous to permit it to be properly said that the injury arose out of the employment. The accumulated pressures must be attributable in substantial part to the working environment. Their causal effect must not have been overpowered and nullified by outside influences.

Looking to the facts connecting the injury in the instant case to the decedent's employment, we find that his animosity toward his supervisor stemmed from the latter's unjustified accusations, made

[6]Olson v. Trinity Lodge, 226 Minn. 141, 32 N. W. (2d) 255; Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19.

out of decedent's presence, that decedent had taken bags and baskets used in their work from the trucks of other drivers; that, for all that appears in the record, the two men did not see each other during the two days that elapsed between the accusations and the assault; that when decedent confronted Stokes at the first opportunity with the latter's accusations the two men had an argument about them; that the physical encounter followed directly from this argument; and that decedent's excited condition continued while the two men, at the direction of the owner and manager of the company, were in the sales manager's office attempting to settle their differences over the accusations. In view of all these factors, and keeping in mind that the findings of the industrial commission are entitled to great weight and will not be disturbed on review unless manifestly contrary to the evidence,[7] we cannot say that the commission erred in finding that the decedent's fatal heart attack arose out of and in the course of his employment. Our function is not to determine whether on the facts the decision of the commission is correct, or even preferable to another, but rather, and only, to determine whether the findings have sufficient basis of inference reasonably to be drawn from the facts.[8]

The employer and its insurer attempt to bring this case within a statutory exclusion from the phrase "personal injuries arising out of and in the course of employment." This exclusion is found in § 176.01, subd. 11, which provides that the phrase shall not include:

"* * * an injury caused by the act of a third person or fellow employee intended to injure the employee because of reasons personal to him, and not directed against him as an employee, or because of his employment."

Their argument, however, is based upon the assumption that dispute between the two men was a personal grudge fight, initiated by

[7]Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797, and cases cited.

[8]Hansen v. Adent, 238 Minn. 540, 545, 57 N. W. (2d) 681, 684.

decedent and defended by Stokes, which did not arise out of the employment because it was too remote from the work-connected accusations. It has thus been disposed of by the commission's finding and the foregoing discussion. The cases of Goodland v. L. S. Donaldson Co. 227 Minn. 583, 36 N. W. (2d) 4, and In re Wooley v. Minneapolis Equipment Co. 157 Minn. 428, 196 N. W. 477, cited by the employer and its insurer, are distinguishable on their facts.

■ Having determined that the finding of the industrial commission that decedent's death arose out of and in the course of his employment must be upheld, we next consider whether the compensation act provides a defense against recovery of an award by an aggressor or his dependents. The only statutory defenses that bar an award of compensation for injury or death of an employee caused by an accident arising out of and in the course of his employment are the two contained in § 176.02, namely, (1) injury or death which is intentionally self-inflicted, and (2) injury or death naturally or proximately caused by the intoxication of the employee. No question of intoxication has been raised, but the employer and its insurer contend that, where a man who knows he is suffering from a heart condition and who must know that an assault will be resisted nevertheless initiates such assault, the injuries to him resulting from the assault are "intentionally self-inflicted." In our opinion, however, the statutory language contemplates a deliberate intent on the part of the employee to cause injury or death to himself, not a failure on his part to realize the probable consequences to himself of his foolish acts.

■ The employer and its insurer further contend that the legislature, by providing the defense of intoxication, has indicated that it has not excepted wilful or unlawful misconduct from those things which are proper defenses to a compensation proceeding and that a reasonable interpretation of the law, based upon sound public policy, requires an adoption of the aggressor defense. We do not agree. The legislature has specifically provided the two defenses mentioned above. It has not provided that aggression is a defense, and it has not provided, as some other states have, that wilful mis-

conduct, unlawful conduct, or wilful intent to injure another is a defense.[9] Under these circumstances we will not read such defenses into the act. If the legislature has gone too far in removing contributory fault as a factor in workmen's compensation, it is for the legislature to correct that action.

Although the question presented is close, we find nothing in the record which would justify our reversing the decision of the industrial commission, and it follows that its decision should be affirmed.

Writ discharged and order affirmed.

Respondent is allowed $250 attorneys' fees over and above her costs and disbursements.

FRANK T. GALLAGHER, JUSTICE (dissenting).

While I agree with the principle enunciated in the majority opinion that an injury, received by an employee in an altercation with another resulting from a work-connected dispute or accusation, may arise out of and in the course of the employee's employment notwithstanding the fact that the injured employee was the aggressor, I cannot agree with the results reached in the instant case. It seems to me that under the facts and circumstances here we are going entirely too far to say in effect that whenever an employee makes an accusation against a fellow employee, as in the instant case, compensation can be collected if a fight develops between the employees the first time they meet again on the premises whenever that time may be. To do so would tend to encourage the nursing of grudges or animosities which, if permitted to be brooded over, usually generate additional hatreds and ill feelings.

I could go along with the majority if the altercation here resulted spontaneously or within a few hours after the provoking incident. However, the accusations were made early in the morning of December 21, and the trouble did not occur until the afternoon of

---

[9]It should be noted that some jurisdictions have rejected the aggressor defense despite the presence of one or more such defenses in their acts. Dillon's Case, 324 Mass. 102, 85 N. E. (2d) 69; Newell v. Moreau, 94 N. H. 439, 55 A. (2d) 476; Commr. of Taxation & Finance v. Bronx Hospital, 276 App. Div. 708, 97 N. Y. S. (2d) 120.

December 23. In the meantime, the message of the accusations had been transmitted from decedent's brother to decedent's wife and from her to decedent and the latter called the sales manager later that morning and threatened to punch his accuser. The sales manager apparently tried to "smooth it out" by telling him to "forget it" as nothing was meant by the remarks. Again the next day decedent told his brother that he was after his accuser, and finally in the afternoon of the third day he met Stokes for the first time after the accusation and the trouble started almost immediately.

In my opinion, entirely too much time elapsed between the time when the accusations were made and the resulting altercations for us to say that it was spontaneous or even within a reasonable time and therefore that decedent's death arose out of or in the course of his employment. It seems to me that to do so will be to open the floodgates in connection with employee disputes and accusations which will permit the carrying on of grudges for two days, a week, or a month, with possible serious consequences resulting whenever the conflicting parties first meet on the premises. For these reasons, I respectfully dissent.

KNUTSON, JUSTICE (dissenting).

It seems to me that we are stretching the meaning of our workmen's compensation statutes too far here, even under the liberal construction usually given such statutes, when we hold that injuries arise out of and in the course of employment when suffered by an employee who deliberately becomes the aggressor in an assault upon a fellow employee without provocation at the time the assault takes place but purely to satisfy a personal grudge he has been nursing for two days, merely on the grounds that the grudge had its origin in a statement remotely relating to their employment. Apparently the justification for so holding is based on the view that the injured workman had no earlier opportunity to commit the assault because the paths of the two employees had not sooner crossed after the words spoken were relayed to the injured employee by his brother who happened to overhear the remarks made. One might well wonder what the result would be if the injured

employee had seen his fellow workman but had decided that it would be better to wait until a better opportunity arose, or if they had met on the street or elsewhere off the premises of the employer, but the injured workman had decided that he would wait until they were on the premises of the employer so that if he were hurt he could collect compensation.

No court has gone as far as we are going here. It would be one thing to hold that an aggressor may recover when injured in a fight arising spontaneously out of something said on the job—a question not involved here and which I see no necessity of deciding now. Even that holding is contrary to the weight of authority.[10] It is quite another thing to hold that an aggressor can still recover even though he has two days in which to cool off. If the test is to be that he must take the first opportunity to secure satisfaction of his continuing grudge, I suppose it would be immaterial whether he waited two days or two weeks just so long as their paths did not cross. I cannot believe that injuries suffered under these circumstances can be said to arise out of and in the course of the employment. I feel compelled to respectfully dissent.

DELL, JUSTICE (dissenting).

In my opinion, to allow an employee who is clearly an aggressor in a fight to recover compensation from his employer for the injuries sustained by the employee as a result of the fight, or to allow dependents of the employee to recover compensation benefits for his death occurring as a result of the fight, is contrary to all justice, and there is no cause the preservation of which is more sacred than the cause of justice. The workmen's compensation act should receive a broad and liberal construction in the interest of the workman to carry out the policy and purpose of the act. However, it should not be given a strained construction—one that the language of the act does not fairly and reasonably support. The legislature enacted the law to relieve workmen from the many common-law defenses and the difficulties encountered by employees in actions in-

[10]See, 6 Schneider, Workmen's Compensation (Perm. ed.) § 1560(g), p. 179.

volving the application of the rule of master and servant. Its purpose is to pay the workman for accidental injuries sustained and to pay his dependents compensation benefits occasioned by his death without regard to the question of negligence. It is a wholesome and salutary law. It should be liberally construed so as to compel industry to pay for accidental injuries sustained by employees when injured while engaged in the course of their employment. Where, however, an employee receives injuries in a fight in which he is the aggressor, it cannot be said, in my opinion, that the employee has suffered accidental injuries arising out of and in the course of his employment for such injuries, in my judgment, are directly traceable to the employee's own acts of aggression. To place a construction upon the workmen's compensation act permitting an employee who is the aggressor in a fight to recover compensation from his employer is carrying the act far beyond the purposes for which it was intended and for which it was enacted.

In 1 Larson, Workmen's Compensation Law, § 11.15(a), the following is stated:

"The great majority of jurisdictions which have considered the question of aggression apart from express statutory defenses have held that the aggressor in an admittedly work-connected fight cannot recover compensation."

It is true that recently there have been decisions from some jurisdictions indicating some relaxation of the foregoing rule. However, I feel that the rule followed by the majority of jurisdictions which have passed on the question[11] is the sound rule.

---

[11]Fulton Bag & Cotton Mills v. Haynie, 43 Ga. App. 579, 159 S. E. 781; Kimbro v. Black & White Cab Co. 50 Ga. App. 143, 177 S. E. 274; Fischer v. Industrial Comm. 408 Ill. 115, 96 N. E. (2d) 478; Triangle Auto Painting & Trimming Co. v. Industrial Comm. 346 Ill. 609, 178 N. E. 886; Horvath v. La Fond, 305 Mich. 69, 8 N. W. (2d) 915; Staten v. Long-Turner Const. Co. (Mo. App.) 185 S. W. (2d) 375; Garrett v. Texas-Louisiana Power Co. 19 La. App. 858, 141 So. 809; Merkel v. T. A. Gillespie Co. Inc. 10 N. J. Misc. 1081, 162 A. 250; Brown v. Philmac Sportswear Co. 23 N. J. Misc. 378, 44 A. (2d) 805; Vollmer v. Industrial Comm. 254 Wis. 162, 35 N. W. (2d) 304; 6 Schneider, Workmen's Compensation (Perm. ed.) § 1560(g), p. 179.

Since concededly we are confronted with the necessity of adopting a new rule as applied to the workmen's compensation law and because I disagree with the rule announced in the majority opinion, I respectfully dissent.

