STEWART v. CHRYSLER CORPORATION.

Workmen's Compensation — Death — Work-Connected Fight — Equally Divided Court.

Award of workmen's compensation to widow for death of her husband from assault by fellow employee, where workmen's compensation appeal board found that the latter was the aggressor in a work-connected fight, is affirmed by an equally divided court.

Appeal from Workmen's Compensation Appeal Board. Submitted June 5, 1957. (Docket No. 23, Calendar No. 47,131.) Decided December 24, 1957.

Irene Stewart, widow of William Stewart, presented her claim against Chrysler Corporation for compensation for the death of her husband while in defendant's employ. Award to plaintiff. Defendant appeals. Affirmed by an equally divided court.

*Rothe, Marston, Mazey, Sachs & O'Connell* (*Bernard Freid,* of counsel), for plaintiff.

*Lacey, Jones & Doelle,* for defendant.

Dethmers, C. J. (*for reversal*). Appeal from an award of compensation by the workmen's compensation appeal board.

Decedent worked on a milling machine which was one of 5 in a row. West of and parallel with the row

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation § 266.

of machines was a roller conveyor for motor blocks with sidetrack lines 8 feet long extending to each machine. Employee Jake McCoy worked up and down the west side of the conveyor using a 5-foot stick with a coat hanger attached to shove motor blocks along the conveyor and onto the side track lines from which they were put through the milling machines. The conveyor was 30 inches high and 18 inches wide. Defendant caused removable steps to be placed on each side of the conveyor and opposite each other, in the nature of a stile, to be used for crossing the conveyor. A set of such steps was provided for each of the 5 machines. Workers at the machines used the steps as part of a convenient route for getting to the other side of the conveyor when coming to or leaving the job, going to get a drink of water, et cetera. It was possible for decedent to get from his machine to the other side of the conveyor by walking past 3 of the milling machines and around the end of the conveyor. The steps were furnished by the defendant, however, to afford a more direct route and as a convenience for decedent and others employed to work at the machines. When shoving blocks along the conveyor line, McCoy found it convenient, in accord with prevailing custom, to move the steps along its west side away from the conveyor about a foot and a half so that he could walk next to the conveyor without interference from the steps. When men at the machines desired to cross and requested it he would move the steps back in place. On the day in question, when he had thus moved the steps from the conveyor, including those next to decedent's machine, decedent had protested repeatedly and at least twice had moved the steps back against the conveyor, after which McCoy had removed them again. Then decedent came up to the top step on the east side of the conveyor, reached over it and struck McCoy, whereupon McCoy struck

him with the clothes-hanger stick, inflicting injuries from which decedent died.

Did decedent's injury arise out of his employment? *Horvath* v. *La Fond,* 305 Mich. 69, is controlling and conclusive of an answer in the negative. *Horvath* is supported by the weight of authority. "The great majority of jurisdictions which have considered the question of aggression apart from express statutory defenses have held that the aggressor in an admittedly work-connected fight cannot recover compensation." 1 Larson's Workmen's Compensation Law, § 11.15(a), citing cases.

The appeal board, after finding that decedent struck the first blow, held that that fact did not bar compensation, relying on *Dillon's Case,* 324 Mass 102 (85 NE2d 69). In *Dillon* the Massachusetts court held in effect that "too fine a point" ought not to be made "as to who was the aggressor," but noted that *Horvath* is to the contrary. And Larson (§ 11.15[c]), in discussing *Dillon's Case,* recognizes that only in Massachusetts and New Hampshire (*Newell* v. *Moreau,* 94 NH 439 [55 A2d 476]) has the aggressor defense been abolished in workmen's compensation cases. Lucid as the reasoning of Chief Justice Qua undoubtedly is in *Dillon's Case* on the question of whether an injury resulting from a work-connected fight arose out of employment, its adoption in Michigan is foreclosed so long as *Horvath* stands.

Plaintiff stresses *Stulginski* v. *Waterbury Rolling Mills Co.,* 124 Conn 355 (199 A 653); and *Schultz* v. *Chevrolet Motor Co.,* 256 Mich 393, which, in turn, is planted on *Little* v. *Atlas Drop Forge Co.,* 221 Mich 604, as holding that when an assault is incidental to some duty of the assaulted person's employment his resulting injuries will, as a rule, be held to arise out of his employment. In each of those 3 cases, however, the situation was, as the court found

in *Stulginski*, that "The plaintiff was not the aggressor but was attacked," thus distinguishing them from the facts at bar. Cases such as those and the factual situations there involved were no doubt in the mind of this Court in *Horvath* when it said (p 72):

"The manner in which the department reached the conclusion that under the above undisputed facts Horvath's death arose out of his employment is indicated by the following from the opinion filed:
\* \* \*

" 'The assault was not provoked by any personal animosity between plaintiffs' decedent and John Gaines. \* \* \* It was an act in the course of their work which provoked the assault and the fatal injuries were inflicted by anger over an act shortly before committed in the conduct of the work. \* \* \* It was an act done in connection with the work which set in motion the action which ultimately resulted in plaintiffs' decedent's death.'

"There might be room for applying the above reasoning to the facts in this case if the injured employee had been the one on whom the assault was committed; rather than the one who under the circumstances of this case was unquestionably the deliberate aggressor."

True, the appeal board here held that McCoy was the aggressor in that he removed the steps despite decedent's protest. But decedent struck the first blow, as the appeal board found. McCoy had not theretofore threatened, injured, nor attempted to injure, decedent. Under such undisputed facts the question of aggression becomes, on appeal, one of law for this Court. *Horvath* v. *La Fond, supra.* There is no difference, of legal consequence, between the work-connected acts of Gaines which aroused Horvath's anger and prompted the assault by him, and the step-removing act of McCoy which prompted the assault by decedent here. In each case the assaulter felt that some right or province of his had

been invaded or violated by the other party. Even though it might be said that McCoy's injury, if any, when he was struck by decedent, arose out of the employment, nevertheless, under the holding in *Horvath*, it must be held that decedent was the aggressor and, hence, that as a matter of law his injuries and death did not arise out of his employment.

Award should be vacated, with costs to defendant.

SHARPE, KELLY, and CARR, JJ., concurred with DETHMERS, C. J.

BLACK, J. (*for affirmance*). Here again the Chief Justice would overrule the appeal board where the latter—having been called upon to apply the course of employment test—has decided a pure question of fact. Issue having thus been joined amongst our membership, the question facing us may in short interrogatory be stated as follows: Was the board justified in finding from the testimony that McCoy, convicted as he has been of manslaughter of Stewart, was the aggressor? I hold for affirmative answer.

Mr. Justice SMITH, writing in dissent words that are now authoritative, approaches the variables of "course of employment" this way (*Salmon* v. *Bagley Laundry Company*, 344 Mich 471, 487):

"We collect these people by the hundreds, even thousands, and we put them to work sometimes amid noise and vibration, sometimes in smoke and steam. They get tired. They get hungry. They get thirsty. They have to go to the toilet. The day wears on and tempers grow short. Relief is sought in horseplay. Trips to the water cooler and coffee urn grow in number and duration. This is the course of employment. 'Course of employment' is not a sterile form of words. It is descriptive of life in the industrial age. These human deviations from the course of the

automation do not suspend the employer-employee relationship. They are not departures from employment, but the very substance of it. They are the inevitable concomitants of the working relationship and conditions which produce the product. Its cost must reflect the fatigue, the irritations, and sometimes the blood that went into it. It is here that we find the explanation for the horseplay cases, the curiosity cases, and the assault cases."

Looking at this record of facts, we face appraisal of what in essence is a question of degree* of Stewart's fault. Is an ordinary, and understandably provoked, slap of another's face sufficient to break the connection or nexus between employment and countering blow when the degree-comparison lies between a stinging cheek and a fatally bashed skull? Larson says (1 Larson's Workmen's Compensation Law, § 11.15[c], pp 126, 127):

"Even the first blow, if it was not a particularly damaging one, or if it was provoked by verbal abuse or by a mistaken idea of attack by a detested co-employee, may be held to fall short of aggression.

"One of the practical difficulties besetting the application of the aggressor defense is the very homely fact that, long after a quarrel is over, it is often almost impossible to determine who really started it. Many a father has come home at 6 o'clock to find he is expected to sit in belated judgment on this issue between his 2 children, the testimony consisting of 'He hit me;' 'Yes, but she called me a stinker;' 'But before that he grabbed my comic book;' and so on and on. One cannot read the facts behind the aggres-

---

* "It is a question of degree whether I have been negligent. It is a question of degree whether in the use of my own land, I have created a nuisance which may be abated by my neighbor. It is a question of degree whether the law which takes my property and limits my conduct, impairs my liberty unduly. So also the duty of a judge becomes itself a question of degree, and he is a useful judge or a poor one as he estimates the measure accurately or loosely." (Mr. Justice Cardozo's "The Nature of the Judicial Process," pp 161, 162.)

sor cases without seeing how closely the average factory scuffle follows this pattern. The difficulty with the defense, as the Massachusetts court concluded, is that it imposes the necessity of selecting one overt act out of a series of hostile verbal, psychological and physical acts as the one which, for compensation purposes, caused the quarrel and elicited the ultimate injury."

Larson refers here, of course, to *Dillon's Case,* 324 Mass 102 (85 NE2d 69), from which I quote (pp 106, 107) with intent of adoption as follows:

"The striking of the first blow is not the sole and ultimate test as to whether the injury arose out of the employment. * * * We must constantly remind ourselves that in compensation cases fault is not a determining factor, whether it be that of the employee alone or that of the employee contributing with the fault of others, unless it amounts to the 'serious and wilful misconduct' of the employee which by section 27, as appearing in St. 1935, c 331,* bars all relief to him. Apart from serious and wilful misconduct, the question is whether the injury occurred in the line of consequences resulting from the circumstances and conditions of the employment, and not who was to blame for it. * * * So even where the employee himself strikes the first blow, that fact does not break the connection between the employment and the injury, if it can be seen that the whole affair had its origin in the nature and conditions of the employment, so that the employment bore to it the relation of cause to effect.

"In the present case there was no evidence whatever of any friction between Dillon and Kenney except in connection with their work. It could reasonably be found that a smoldering enmity was engendered between these men by the carrying on of the employer's work, the control which Dillon as gang leader had over Kenney, and the manner in

---

* Mass, Ann Laws, ch 152, § 27.—Reporter.

which he exercised that control in his employer's interest, and it could even be found that at the moment of the trouble Kenney was intentionally interfering with Dillon's work by standing upon the pallette which it was Dillon's duty to raise. In such a case, when the accumulated strain finally breaks down resistance, it seems a narrow treatment of the problem to determine the granting or denying of compensation by the more or less fortuitous circumstance of who aimed the first blow."

In this case the facts as found show that Stewart, in circumstances of annoying provocation, did no more than slap McCoy's face with his hand. What was the severity of the slap? Was it a "particularly damaging one"? Did it amount to "a vicious and unprovoked assault," as found in presently-considered *Horvath*? Was it of such force as to require our matter-of-law brand of aggressor on Stewart? Surely, and as the signers of this opinion note from the appeal board's essential findings, these are questions for constituted triers of fact rather than questions of law for detached appellate judges.

The analogy of the criminal process is helpful here. Noting again that McCoy was convicted of manslaughter of Stewart, and assuming that the same record of facts was made before the jury when the latter undertook consideration of McCoy's guilt or innocence, would it have been right for the trial judge to instruct that Stewart was the aggressor? I think not (and suspect he did not do so), since the question of identity of the aggressor in personal assault cases, whether the action be one for damages or one brought by the people, invariably becomes one of fact.* And, when the question arises in compensation proceedings, it is usually the same. See

---

* See treatment of the respondent's successive requests to charge, dealing with jury-identification of the aggressor, in the homicide case of *People* v. *Palmer*, 96 Mich 580, and 105 Mich 568.

*Stulginski* v. *Waterbury Rolling Mills Company,* 124
Conn 355, 364, 365 (199 A 653), where it was said:

"The adoption of a rule, that if an injured em-
ployee was the aggressor he could not recover com-
pensation, though the injury arose out of the condi-
tions of the employment, would require a definition
of terms which would be extremely difficult. Cer-
tainly to hold that no matter what provocation and
angry words there might have been between the par-
ties, he who struck the first blow, slight though it
might be, would be denied compensation would be
neither reasonable nor in accordance with sound
principles. That the injured employee was the ag-
gressor would certainly be a factor, in some cases an
important factor, to be considered in determining
whether the chain of causation between the condi-
tions of the employment and the injury has been
broken. But it would have that effect as bearing
upon the question whether there had intervened per-
sonal motives, designs, or the like, sufficient to con-
stitute an intervening cause. *  *  *

"The question presented in this type of case, as
in others involving the issue whether an injury
arose out of the employment, is essentially one of
fact, to be determined in view of all the relevant
circumstances, and the conclusion of the commis-
sioner must stand unless it is one he could not rea-
sonably or legally reach upon the subordinate facts."

The appeal board found on authority of *Dillon* and
*Stulginski,* and rules set forth in *Marshall* v. *Baker-
Vawter Co.,* 206 Mich 466; *Schultz* v. *Chevrolet Mo-
tor Co.,* 256 Mich 393; and *Pekin Cooperage Compa-
ny* v. *Industrial Commission,* 285 Ill 31 (120 NE 530),
that McCoy was the aggressor and that Stewart's
injury and death at McCoy's blow arose out of and in
the course of Stewart's employment. Such finding
is fully supported by evidence. The board found:

"McCoy deliberately and in total disregard of de-
cedent's protests removed the steps which had been

provided by the employer for the use, convenience, benefit and protection of decedent and other employees in the course of their work. The argument immediately preceding and culminating in the fatal injury arose out of and because of such actions on McCoy's part. This argument would not have occurred but for McCoy's wilful acts in complete disregard of decedent's rights. The acts of McCoy were the first acts of hostility and caused and precipitated the quarrel which resulted in the fatal injury. McCoy was the aggressor. He caused the controversy. The fight arose because McCoy wilfully disturbed, disrupted and interfered with a method and means of ingress and egress incidental to the employment provided, prescribed and approved by the employer. While decedent struck the first blow, this is not the controlling test as to whether the injury arose out of the employment. It did not make decedent the aggressor. Previous acts of aggression on the part of McCoy engendered the enmity and precipitated the actual physical conflict. The disagreement arose out of the employer's work. There was causal relation between the employment and the fatal injury. Acts occurring in the course of work provoked the altercation which brought about the death of decedent. The fatal injury clearly arose out of and in the course of decedent's employment."

My Brother concludes that *Horvath* v. *La Fond,* 305 Mich 69, is controlling and that it requires reversal of the appeal board's order awarding compensation to Stewart's widow. As to *Horvath* I am in agreement with the appeal board that it is factually distinguishable. The board said:

"The factual situation in the *Horvath Case* is substantially different than in the instant case. In the *Horvath Case* some 20 minutes intervened from the time of the original altercation to the time of the incident involving injury. After such a potential cooling-off period, Horvath left his own place of duty, hunted down Gaines in the latter's place of

work, and deliberately and wilfully perpetrated a vicious and unprovoked assault upon Gaines to gratify his feeling of anger or hatred. In the instant case there was no break in time between the commencement of the argument and the fatal injury. Also decedent was at his own place of duty when the fatal altercation developed. He did not hunt down McCoy or wilfully perpetrate an unprovoked assault. Decedent was not an aggressor."

I vote to affirm.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.